**Edna MARZUKI, Plaintiff–Appellant,**

**v.**

**AT & T TECHNOLOGIES, INC., Defendant–Appellee.**

**No. 87–2361.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1988.

Decided June 20, 1989.

Bernard K. Weiler, Puckett Barnett Larson Mickey Wilson & Ochsenschlagen, and Peter K. Wilson, Aurora, Ill., for plaintiff-appellant.

Robert H. Joyce, Seyfarth Shaw Fairweather & Geraldson, Ronald L. Lipinski, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff-appellant, Edna Marzuki, was employed by the defendant-appellee, AT & T Technologies, Inc. (AT & T or company), in a position that was covered by a collective bargaining agreement. When she was discharged, she filed a grievance pursuant to the collective bargaining agreement. While this grievance was pending, Ms. Marzuki filed a claim in state court. The district court granted AT & T's motion to remove the claim to federal court and then dismissed the claim on the authority of *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987) (en banc). The Supreme Court subsequently reversed the Seventh Circuit decision in *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). We vacate the judgment of the district court and remand the case for further proceedings in conformity with this opinion.

### I.

#### Facts

From April 30, 1979 until September 19, 1985, Edna Marzuki was employed by AT

& T and its predecessor, Western Electric, Inc. Ms. Marzuki held a position as a bench hand in the company's Montgomery, Illinois plant. AT & T is an Illinois employer subject to the provisions of the Illinois Workers' Compensation Act. According to the complaint, as a bench hand, Ms. Marzuki was required "to sit in a position which caused constant flexion of her cervical spine." R.1 at A (Appellant's Complaint at 2, ¶ 6) [hereinafter Complaint]. As a result of this condition of employment, Ms. Marzuki suffered severe and disabling injuries to her spine which required her to undergo continuous treatment—including periodic hospitalization—and, on April 9, 1984, surgery. Complaint at 2, ¶¶ 7–8. Ms. Marzuki alleges that, upon her return to work, AT & T made her resume work activities that aggravated the condition of her spine. As a result of her injuries, Ms. Marzuki became disabled. The appellant alleges that, on September 19, 1985, she was wrongfully discharged from her employment.

At the time of her discharge, and throughout her employment with AT & T, Ms. Marzuki was a member of the International Brotherhood of Electrical Workers, AFL–CIO (the Union). The terms and conditions of her employment were governed by a collective bargaining agreement between the company and the Union, known as the General Agreement.[1] On September 19, 1985, the Union was notified that Ms. Marzuki had been terminated "for an unacceptable attendance record." R.1 at B.2. On September 25, the Union filed a grievance alleging that the appellant's discharge was unfair and in violation of the [Employee] Attendance Plan and Article 30, paragraph 4 of the General Agreement. *Id.* The grievance was considered and discussed between the company and the Union pursuant to Article 8 of the General Agreement and was pending at the time the appellant filed her claim in state court.[2] R.1 at B, p. 2, ¶ 5.

On March 5, 1986, Ms. Marzuki filed a two-count complaint in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois. In Count I, Ms. Marzuki prayed for damages in the amount of $15,000 plus reasonable attorney's fees. In Count II, she alleged that AT & T's conduct was "reprehensible" and violated Illinois public policy, and prayed for punitive damages in the amount of $1,000,000.

On April 9, 1986, AT & T filed a petition seeking to remove the case to the United States District Court for the Northern District of Illinois. In its petition, AT & T alleged that the district court had original jurisdiction over the action pursuant to 28 U.S.C. § 1331 because Ms. Marzuki's allegation of wrongful discharge alleged, in reality, a breach of the collective bargaining agreement and thus was preempted by section 301 of the LMRA. Appellee's Br. at 4. On the same date, AT & T moved to have the case dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ms. Marzuki answered AT & T's motion to dismiss and, on April 28, 1986, filed a petition to remand asserting that 28 U.S.C. § 1445(c) prevented the removal because the action arose under the workers' compensation laws of Illinois. The court denied Ms. Marzuki's motion to remand to state court and, on July 14, 1987, the case was dismissed. The district court's judgment merely stated the following: "That defendant['s] motion to dismiss is granted. (See *Lingle v. Norge Division of Magic Chef,* [*Inc.,* 823 F.2d 1031 (7th Cir.1987) (en

---

1. Article 30 of the General Agreement provides that an employee cannot be discharged without "just cause." R.1 at B.1., p. 73, ¶ 6. The just cause provision, Paragraph 7 of Article 30 of the General Agreement, provides that:

    Should the Arbitrator decide that the action [of termination] of the Company was without just cause, the employee shall, if not previously reinstated, be offered reinstatement....
    Article 8 of the General Agreement provides that an employee can contest his or her discharge through the grievance procedure and outlines the procedure to be followed. R.1 at B.1., p. 12. If, after exhaustion of the Article 8 grievance procedure, the grievance still has not been settled, it can be submitted to an arbitrator in accordance with the procedures set forth in Article 9.

2. At oral argument, Ms. Marzuki's attorney indicated that, as of that time, the grievance was still "pending undetermined."

banc) ].)." R.22. Ms. Marzuki appeals the district court's order denying her petition to remand and the judgment dismissing her complaint.

This court rendered its en banc decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987) (en banc) on June 23, 1987. Ms. Marzuki filed her brief in this appeal on October 6, 1987. On October 23, 1987, the Supreme Court granted a petition for writ of certiorari in *Lingle*. Due to the identity of the issues, the proceedings in this case were stayed until the Supreme Court announced its decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). At this court's request, the parties filed supplemental briefs addressing the impact of the Supreme Court's decision in *Lingle* on the issues raised in their original briefs.

## II.

### Analysis

On appeal, we must decide whether the claim set forth in Ms. Marzuki's complaint is preempted by section 301 of the LMRA. If the claim is preempted, it was properly removed to the district court.

### 1.

Our resolution of this issue must be governed by the mandate of the Supreme Court's holding in *Lingle*. The mandate of *Lingle* is straightforward: "an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." 108 S.Ct. at 1885. As we have noted recently in *Douglas v. American Information Technologies Corp.*, No. 88–1815, 877 F.2d 565 (7th Cir.1989) (footnote omitted):

This approach is straightforward because the policy concern requiring preemption in the section 301 context is also straightforward. Federal labor policy mandates that uniform federal law be the basis for interpreting collective bargaining agreements. This policy reduces the possibility "that individual contract terms might

have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. *Id.*

However, as we also noted in *Douglas:*

[F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 [105 S.Ct. 1904, 1911, 85 L.Ed.2d 206] (1985). Indeed, in *Lingle*, the Court made it clear that, so long as a state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for the purposes of section 301. 108 S.Ct. at 1883. Thus, "§ 301 preempts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement." *Id.* at 1883 n. 8. The mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state-law claim. *Id.* at 1883. If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by section 301. *See id.* at 1881–82 (analysis of the elements of Illinois tort of retaliatory discharge does not require court to interpret collective bargaining agreement).

*Douglas*, at 569–70 (footnotes omitted).

### 2.

■ In the normal course of adjudication, our next step would be to analyze the elements of the state-based cause of action asserted by Ms. Marzuki so that we might later determine whether adjudication of such a claim would require an interpretation of the collective bargaining agreement. In this case, however, the complaint, filed long before the clarification of the Supreme

Court in *Lingle*, is ambiguous as to the precise nature of the claim that it purports to state. Ms. Marzuki submits that it states a claim for retaliatory discharge for exercising rights under the Illinois workers' compensation statute. Such a claim, the Supreme Court held in *Lingle*, can be evaluated without interpreting the collective bargaining agreement. The Court viewed the retaliatory discharge claim as presenting

> purely factual questions [that pertain] to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement.... Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement.

108 S.Ct. at 1882 (footnote omitted). The Supreme Court of Illinois has established that a claim for retaliatory discharge

> exists independent of any privately negotiated contract rights or duties.... It bears noting that even if the labor contract covering [the employee] recited the rights and obligations arising under the Workers' Compensation Act and expressly provided that a discharge in contravention of the Act was without "just cause," the claim[ ] would still fall entirely outside the preemptive sphere of section 301. Neither an employer nor a union can strip an employee of the protections of Illinois law by merely restating the rights and obligations that arise thereunder in a private labor agreement.

*Gonzalez v. Prestress Eng'g Corp.*, 115 Ill.2d 1, 104 Ill.Dec. 751, 503 N.E.2d 308, 313 (1986), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3248, 97 L.Ed.2d 779 (1987).

On the other hand, the defendant characterizes the complaint as alleging a breach of the collective bargaining agreement which, it argues, is the basis of the attendance plan that allegedly justifies Ms. Marzuki's discharge. Such a characterization, if appropriate, would justify our holding the state-based cause of action preempted by section 301 and therefore subject to removal to federal court. In *Lingle*, the Supreme Court reiterated its holding in *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), that:

> Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." *Electrical Workers v. Hechler*, 481 U.S. [851, 859] n. 3 [107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791] ... (1987); *see also Allis–Chalmers Corp. v. Lueck*, 471 U.S. [202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) ].

*Lingle*, 108 S.Ct. at 1883–84 n. 10 (quoting *Caterpillar*, 482 U.S. at 394, 107 S.Ct. at 2431).

On the record before us, we cannot choose definitively between these competing characterizations. The complaint was drafted long before the Supreme Court's holding in *Lingle* and therefore its ambiguities are somewhat more tolerable than they might otherwise be. Moreover, the full texts of the collective bargaining agreement and the attendance plan are not attached to the complaint or to the petition for removal.

■ On remand, it would be appropriate, under the circumstances presented here, for the district court to permit the plaintiff to amend her complaint. *Cf. Coventry v. United States Steel Corp.*, 856 F.2d 514, 520 (3d Cir.1988) ("new decisional law that intervenes between the start and conclusion of an action is a sufficient reason to permit an amendment to a complaint and allow the inclusion of a new cause of action").[3] It would also be appropriate, un-

---

**3.** We are aware that, when a plaintiff amends the complaint in a properly removed case so that the claim giving rise to federal jurisdiction drops out of the case, any remaining state-law claims are normally dismissed without prejudice, *see, e.g., Austwick v. Board of Educ.*, 555 F.Supp. 840, 842–43 (N.D.Ill.1983); *Laga v. University of Health Sciences/Chicago Medical School*, 542 F.Supp. 23, 24–25 (N.D.Ill.1982); *cf. La Buhn v. Bulkmatic Transp. Co.*, 865 F.2d 119,

der the circumstances presented here, to permit the defendant to amend, in light of whatever changes the plaintiff may make, its petition for removal. In evaluating the work product of counsel, it will be quite appropriate for the district court to require a high degree of specificity and precision. Certainly, it has the right to require that the parties tender the *entire* collective bargaining agreement and attendance plan. With the litigation in this posture, and mindful that plaintiff is "the master of the claim," *see Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429, but that "artful pleading" to avoid a necessary federal question, *see Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d 342 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986), and *Oglesby v. RCA Corp.,* 752 F.2d 272 (7th Cir.1985), is not to be tolerated, the district court will be able to apply with confidence the straightforward rule enunciated in *Lingle:* "an application of state law is pre-empted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." 108 S.Ct. at 1885.

### Conclusion

Accordingly, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

121 (7th Cir.1988), or remanded to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988); *see also id.* (if the plaintiff amends her complaint in an "attempt[ ] to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case"). The circumstances of this case, however, are somewhat different. The Supreme Court's clarification of section 301 preemption analysis in *Lingle* makes it appropriate for the parties and the district court to once again address the propriety of removal itself.