THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES KUCHAN, Defendant-Appellant.

First District (6th Division)   No. 1—90—1222

Opinion filed September 13, 1991.

Michael J. Pelletier and Sally Swiss, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee G. Goldfarb, Kenneth T. McCurry, and Jillian Cerone-Marisie, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

In March 1987, defendant, James Kuchan, was indicted for murder, feticide and concealment of a homicidal death. On July 21, 1988, defendant was reindicted and charged with murder and concealment of a homicidal death, but instead of including the feticide offense, defendant was charged with intentional homicide of an unborn child. Following a bench trial, defendant was found guilty of murder by the trial court and sentenced to an extended term of natural life, with 40 years' concurrent imprisonment for intentional homicide of an unborn child. (At the close of the State's case, the court entered judgment for defendant on the offense of concealment of a homicide.) Defendant alleges the following errors on appeal: trial counsel's failure to move for a speedy trial dismissal of the charge of intentional homicide of an unborn child deprived defendant of effective assistance of counsel; the

indictment for intentional homicide of an unborn child failed to allege an essential element; and that the trial court improperly imposed a natural life sentence for murder upon defendant. (Except as to the propriety of the sentence, defendant does not challenge his conviction for murder.)

In view of the nature of the issues on appeal, the facts may be set forth briefly. The evidence established, both through defendant's confession and other testimony, that on March 14, 1987, defendant choked to death his wife, Donna Kuchan. At the time of her death, the deceased was approximately seven months pregnant. The crime was committed in the parties' apartment. In his confession, defendant stated that the deceased complained to him about his use of cocaine, they argued, and he choked her to death. For three days, defendant left the deceased's body in the bathroom, and told no one about what happened. During those three days, defendant used cocaine, drank beer, and watched television.

The deceased's mother and sister testified for the State as to their unsuccessful attempts during that three-day period to see or talk to the deceased. Defendant repeatedly told them that the deceased was not at home.

The deceased's co-worker, a nurse's aide, testified for the State for the limited purpose of showing the circumstances of defendant's arrest. On March 17, 1987, defendant came to the co-worker's place of work and asked her to come to his apartment because the deceased was having trouble breathing. When they arrived at the apartment, defendant locked the door and told the co-worker that the deceased was in the bedroom. The co-worker entered the bedroom, and defendant sexually molested her at knife point. Defendant told the co-worker that he and the deceased had argued and that the deceased had returned to her mother's home. When defendant finally allowed the co-worker to leave the apartment, she immediately contacted the police.

The police officers obtained a search warrant and went to defendant's apartment. When the officers received no response to their knock, they forced entry and found defendant inside. The officers then found the deceased's body in the bathroom. Her body was in the early stages of decomposition.

Dr. Nancy Jones, who performed the autopsy on the deceased, testified for the State that the deceased had been dead between three and five days. The female fetus that was removed from the deceased was between seven and eight months gestation, weighed 3 to 3½ pounds, and would have been viable with immediate medical intervention.

Defendant testified that he and the deceased argued about her pregnancy. She told defendant that he was not the father of the child and that she wanted to put the child up for adoption. Defendant did not remember choking the deceased.

After a hearing in aggravation and mitigation, the trial court sentenced defendant to an extended term of natural life for murder, and to a concurrent term of 40 years for intentional homicide of an unborn child.

■ We direct our attention first to defendant's argument of ineffective assistance because defense counsel failed to move for a speedy trial dismissal of the intentional homicide of an unborn child charge. After his arrest in March 1987, defendant was indicted on two counts of murder, two counts of feticide, and one count of concealment of a homicidal death. The record shows that 16 continuances were granted; 13 by agreement of the parties, and three continuances were requested by defendant. On July 21, 1988, defendant was reindicted and charged with two counts of murder and concealment of a homicidal death. However, the feticide counts were dropped, and two counts of intentional homicide of an unborn child were added. (The State nol-prossed the March 14, 1987, indictment.) Defendant maintains that the State's failure to bring defendant to trial within the 120 days provided by the speedy trial act (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)) precludes prosecution of the offense of intentional homicide of an unborn child.

Defendant relies upon *People v. Hawkins* (1991), 212 Ill. App. 3d 973, 571 N.E.2d 1049, for the proposition that where new and additional charges arise from the same facts as the original charge and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new charges runs from the date custody began on the original charges. In *Hawkins*, defendant was arrested and charged with robbery on June 1, 1987. Subsequently, the State amended the information filed against defendant to include a charge of armed robbery. The defendant in *Hawkins* argued successfully in this court that since the two charges stemmed from the same incident, the State knew of its ability to file an armed robbery charge at the time it filed the original robbery charge against defendant. This court held that defendant's confinement prior to the filing of new charges arising from the same incident for which he was arrested could not be charged to defendant for speedy trial act purposes. Consequently, we found that defense counsel's failure to move for dismissal of the charge for violation of the

speedy trial act violated defendant's right to effective assistance of counsel.

We find, however, that *Hawkins* is factually distinguishable from this case. Armed robbery is not the same offense as robbery; it contains separate elements and is classified differently for purposes of sentencing. Yet defendant here contends that there are substantive differences between the elements included in the feticide charge as opposed to those contained in the offense of intentional homicide of an unborn child. The feticide statute provided:

"§9—1.1. Feticide. (a) A person commits the offense of feticide who causes the death of a *fetus* if, in performing the acts which caused the death, be [*sic*] without lawful justification:

(1) either intended to kill or do great bodily harm to the *mother carrying the fetus* or knew that such acts would cause death or great bodily harm *to the mother*; or

(2) he knew that the acts created a strong probability of death or great bodily harm to the mother; or

(3) he was attempting or committing a forcible felony against the mother other than voluntary manslaughter; and

(4) he knew, or *reasonably should have known under all of the circumstances*, that the *mother* was pregnant.

(b) *For purposes of this Section, 'fetus' means a fetus which the physician or pathologist performing the fetal autopsy determines, based upon the particular facts of the case before him, to have been capable, at the time of its death, of sustained life outside of the mother's womb with or without life support equipment, and such capacity for sustained life is proven beyond a reasonable doubt.*

\* \* \*

(d) Penalty. The sentence for feticide shall be the same as for murder, except that the death penalty may not be imposed." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 9—1.1. (Repealed by Pub. Act 84—1414 §2, eff. Sept. 19, 1986; Pub. Act 85—293, art. II, §21, eff. Sept. 8, 1987.)

The newly enacted statute designed to replace the feticide statute provides:

"§9—1.2. Intentional Homicide of an unborn child. (a) A person commits the offense of intentional homicide of *an unborn child* if, in performing acts which cause the death of *an unborn child*, he without lawful justification:

(1) either intended to cause the death of or do great bodily harm to the *pregnant woman or her unborn child* or knew that

such acts would cause death or great bodily harm to the *pregnant woman or her unborn child*; or

(2) he knew that his acts created a strong probability of death or great bodily harm to the *pregnant woman or her unborn child*; and

(3) he knew that the woman was pregnant.

(b) *For purposes of this Section, (1) 'unborn child' shall mean any individual of the human species from fertilization until birth, and (2) 'person' shall not include the pregnant woman whose unborn child is killed.*

\* \* \*

(d) Penalty. The sentence for intentional homicide of an unborn child shall be the same as for *first degree murder*, except that the death penalty may not be imposed." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 9—1.2.

Defendant argues that at the time of his arrest on March 14, 1987, he was improperly charged with the feticide statute because it had already been repealed by Public Act 84—1414, section 2, effective September 19, 1986. However, amendatory Public Act 84—1450 temporarily revived the feticide statute, and applies to acts occurring on or after January 1, 1987, which cause the death of another. Advisory Public Act 85—293, effective September 8, 1987, again repealed the feticide statute. Our legislature has provided that in instances of multiple amendments of the same subject matter, the act last acted upon by the General Assembly is controlling to the extent of such conflict. (Ill. Rev. Stat. 1987, ch. 1, par. 1105.) Thus, at the time defendant murdered the deceased and her female fetus, the feticide statute had not yet been officially repealed.

Review of the legislative history reveals that the intentional homicide of an unborn child statute was intended to fill a loophole that had been present in the feticide statute requiring viability of the fetus to be proven beyond a reasonable doubt. The revised statute "replaces the current Illinois feticide law which has been found to be, although well-meaning, not adequate for protecting wanted unborn children." (84th Ill. Gen. Assem., House Proceedings, June 23, 1986, at 81 (statements of Representative Pullen).) It is also instructive to review introductory comments made in the Senate by Senator Kelly in comparing the two bills, to wit:

"[T]hat particular law is the same as this one, the only difference is this covers from the beginning of conception until the three-month period which is the viability \* \* \*." 84th Ill. Gen.

Assem., Senate Proceedings, May 13, 1986, at 74 (statements of Senator Kelly).

A comparison of the two statutes set forth above indicates minor revisions; namely, the feticide statute refers to "mother carrying the fetus" as opposed to "pregnant woman" as set forth in the later statute. The principal difference lies in the protection afforded to an unborn child from fertilization until birth, as opposed to encompassing only an unborn child who has reached the fetal stage of development and is therefore capable of sustaining life outside of the mother's womb at the time of death.

In this case, the female fetus carried by the deceased at the time of her death was within the purview of the protection afforded by both the feticide and subsequent intentional homicide of an unborn child statute. Dr. Jones testified that the female fetus removed from the deceased was between seven and eight months gestation, weighed 3 to 3½ pounds, and would have been viable with immediate medical intervention.

In order to prevail under a claim of ineffective assistance of counsel, a defendant must prove two elements: (1) that his attorney failed to perform as a reasonably competent attorney, and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.

We find that defense counsel's motion for a speedy trial dismissal of the charge of intentional homicide of an unborn child would have been futile. We hold that the State's reindictment of defendant on July 21, 1988, was proper. No new offense was added by the second indictment, nor was the offense changed in degree or severity. (*People v. Delaney* (1975), 28 Ill. App. 3d 315, 328 N.E.2d 656.) The purpose of the intentional homicide of an unborn child statute was to protect the unborn from fertilization until birth; however, that protection was already extended to the fetus in this case by virtue of the feticide statute under which defendant was originally charged at the time of his arrest in March 1987.

Accordingly, we find that defendant was not denied his sixth amendment right of effective assistance of counsel. In essence, the intentional homicide of an unborn child statute was a technical revision of the feticide statute requiring proof of the same elements and imposing an identical sentence upon conviction. Therefore, defense counsel would not have prevailed upon a motion for a speedy trial dis-

missal pursuant to section 103—5(a) (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)).

Defendant next contends that where the indictment for intentional homicide of an unborn child failed to allege an essential element, the trial court should have reversed defendant's conviction for that offense. In the first count of the second indictment, the State charged that defendant:

> "without lawful justification intentionally and knowingly choked and killed Donna Kuchan with his hands, knowing that his acts would cause great bodily harm or death to Donna Kuchan or her child."

In the second count, the State charged that defendant

> "without lawful justification intentionally and knowingly choked and killed Donna Kuchan with his hands, knowing that his acts created a strong probability of death or great bodily harm to Donna Kuchan or her unborn child."

In the initial indictment, both counts read that defendant's actions caused "the death of a fetus carried by its mother Donna Kuchan." Defendant maintains that the State's failure to specifically allege the death of the unborn child in the second indictment requires that defendant's conviction must be reversed.

■ We find no merit in defendant's argument. Section 111—3 of the Code of Criminal Procedure of 1963 provides that a charging instrument must set forth "the nature and elements of the offense charged." (Ill. Rev. Stat. 1987, ch. 38, par. 111—3(a)(3).) Moreover, our supreme court has held that in certain instances, the statute alleged to have been violated can itself adequately inform the defendant of the nature and elements of the offense charged. *People v. Thomas* (1990), 137 Ill. 2d 500, 561 N.E.2d 57, citing *People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.

We have concluded that the intentional homicide of an unborn child indictment was a continuation of the original feticide indictment, which specifically alleged the death of the fetus. Thus, defendant was adequately apprised of the charges against him, and the second indictment created no notice problem for him or his counsel. *United States v. Lowe* (7th Cir. 1988), 860 F.2d 1370, 1381.

Defendant finally contends that the trial court abused its discretion in sentencing him to natural life when there were no facts to support the trial court's finding that the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" pursuant to section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2)).

■ At the sentencing hearing, the judge received the following facts in aggravation. Defendant was previously convicted of residential burglary and felony attempted burglary on May 15, 1984, and was released on parole on March 16, 1986. The deceased's sister testified that defendant had previously broken the deceased's nose, and that on a former occasion defendant had tried to kill the deceased. In mitigation, testimony was presented that the 32-year-old defendant had an extensive history of drug and alcohol usage, that he came from a broken home, and that defendant's mother, stepfather and grandfather died during the pendency of this case. The trial judge considered defendant's criminal background, but stated that he based his sentence primarily on the facts of this case.

Review of the record reveals that after choking to death his pregnant wife, defendant left her body in the bathroom for over three days while, by his own admission, he "partied with cocaine," drank beer and watched television. We agree with the trial judge's finding that "this crime was so vile and repulsive as to almost defy description," and we find that the court properly imposed a sentence of natural life.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and LaPORTA, JJ., concur.