THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY E. SHOULTZ, Defendant-Appellant.

Fourth District   No. 4—96—0311

. Argued May 14, 1997.—Opinion filed June 30, 1997.—Rehearing denied July 30, 1997.

Daniel D. Yuhas and Duane E. Schuster (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick W. Kelley, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial, defendant, Tony E. Shoultz, was convicted of first degree murder (720 ILCS 5/9—1(a)(1) (West 1994)) and intentional homicide of an unborn child (feticide) (720 ILCS 5/9—1.2 (West 1994)) and sentenced to natural life imprisonment. Defendant appeals, alleging (1) the feticide statute violates the proportionate penalties clause of the Illinois Constitution because it imposes greater penalties than does the Illinois Abortion Law of 1975 (Abortion Law) (720 ILCS 510/1 *et seq.* (West 1994)); (2) evidence he had been told the victim was pregnant was improperly admitted hearsay; (3) the court erred in failing to suppress his confession based on his intoxication; and (4) he was improperly sentenced to natural life imprisonment. We affirm.

The facts will be referred to only as they deal with the issues on

appeal. On June 9, 1994, the victim, Jennifer Florence, was shot and killed while seated in a motor vehicle at 12th and Jackson Streets in Springfield, Illinois.

The obstetrician who had examined Jennifer on June 4, 1994, and administered a sonogram on June 6, 1994, stated that the fetus had then been alive and 11 or 12 weeks in gestational age. The coroner performing the autopsy testified that the fetus was in the late third month of the first trimester but was not viable in the sense it could have survived outside the womb. He also testified that Jennifer sustained three gunshot wounds, one of which penetrated her heart.

■ Defendant first argues that because the feticide statute imposes greater penalties for offenses than does the Abortion Law, it violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant contends (1) offenses under the feticide statute and the Abortion Law are "identical"; and (2) even if not identical, under certain circumstances, exactly the same criminal act can constitute a violation of both statutes. As to the second contention, that the offenses need not be identical, defendant cites *People v. Wisslead*, 94 Ill. 2d 190, 446 N.E.2d 512 (1983), a case that is wholly distinguishable. In *Wisslead*, the court compared two predicate offenses carrying unequal penalties, which were disproportionately enhanced by common aggravating acts, resulting in the elevation of the lesser predicate offense to the graver. *Wisslead*, 94 Ill. 2d at 195-96, 446 N.E.2d at 514-15.

There are in this case no common aggravating acts that disproportionately elevate the punishment for any predicate offenses. In addition, defendant presents a contorted argument based on a hypothetical scenario of a physician performing an abortion affecting a viable fetus and being held criminally liable under both statutes. Since defendant was not a physician performing an abortion on a viable fetus, he lacks standing to raise this claim.

■ As to defendant's claim that offenses under the feticide statute and the Abortion Law are "identical," even a cursory comparison reveals the fallacy of this conclusion. The feticide statute defines the offense as (1) an intent to cause death or great bodily harm to the woman or the fetus, or knowledge that acts create a strong probability of death or great bodily harm, and (2) knowledge the woman is pregnant, with an express exemption for any acts committed during an abortion. 720 ILCS 5/9—1.2 (West 1994). Section 6 of the Abortion Law mandates that (1) when a physician performing an intentional abortion judges that there is a reasonable possibility of sustained survival of a viable fetus, (2) he utilize the abortion method most likely to preserve the life and health of the fetus. 720 ILCS

510/6 (West 1994). The Abortion Law does not penalize abortions, but a failure to utilize abortion methods or medical care most likely to preserve the life or health of a viable fetus. The persons and acts subject to penalty under each statute, as well as the potential victims, are entirely different. Since defendant was not a physician performing an abortion on a viable fetus, he could not be liable under the Abortion Law; any physician performing an abortion is excepted from prosecution under the feticide statute.

The availability of different penalties for offenses that are related but not identical does not violate the constitutional prohibition against disproportionate penalties. *People v. Parker*, 277 Ill. App. 3d 585, 591, 660 N.E.2d 1296, 1300 (1996). Despite defendant's contention that both statutes profess to protect the unborn, the statutory schemes are not even similar.

■ Defendant next contends the testimony by Jennifer's caseworker, Jodi Grant, that she heard Jennifer tell the defendant she was pregnant was improperly admitted hearsay used by the State to establish substantive evidence of an element of the offense of feticide. Grant testified she went to the victim's residence on June 7 to take Jennifer to Sojourn House. While waiting, Jennifer received two phone calls from the defendant, to whom Grant also spoke. The court first gave the jury a limiting instruction, and Grant then testified that she heard Jennifer mention she was pregnant. Over defendant's objection, the trial court admitted the testimony "for the purpose of showing that the victim advised the defendant she was pregnant, not that it's proof that she was." Hearsay testimony is an out-of-court statement offered to prove the truth of the matter asserted and is dependent on the credibility of the out-of-court declarant. *People v. Rogers*, 81 Ill. 2d 571, 577, 411 N.E.2d 223, 226 (1980). Where an out-of-court statement is offered for some purpose other than to establish the truth of the matter asserted, the statement is not hearsay and is admissible. *People v. Albanese*, 102 Ill. 2d 54, 70, 464 N.E.2d 206, 214 (1984). Testimony of out-of-court statements used other than to establish the truth of the matter asserted does not rest for its value on the credibility of the out-of-court declarant but, rather, on the credibility of the witness, who was present in court and subject to cross-examination. *People v. Smith*, 236 Ill. App. 3d 812, 819, 602 N.E.2d 946, 952 (1992). The State argues that the testimony was not offered for its truth, *i.e.*, that Jennifer was pregnant, because this was established by Jennifer's treating physician and the coroner, but only to show that the conversation had occurred and the defendant had knowledge of the pregnancy. We agree.

A statement that is offered to prove that a listener had notice of

the information contained therein, rather than to prove the truth of the matter asserted, is not hearsay. See *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 806, 610 N.E.2d 683, 699 (1993). A statement is not hearsay "when offered for the purpose of showing that the listener was placed on notice or had knowledge. *** [T]he fact that the statement was made is relevant for its effect on the listener without regard to the truth of the matter asserted." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.5, at 648 (6th ed. 1994). The statement by Grant was not offered for its truth, that Jennifer was pregnant, but solely to show defendant had knowledge of the pregnancy, and the jury was instructed to consider the testimony for this limited purpose. The testimony was not hearsay and was properly admitted.

Defendant next argues his gross intoxication rendered him unable to knowingly waive his *Miranda* rights and the court erred in not granting his motion to suppress. In support, defendant points to (1) statements made by Detective Oney to Grant that defendant was "drunker than 18 Indians" or "falling down drunk" at the time of the offense; (2) the testimony of Oney, Detective Ross, and arresting officer Schober that they noted an odor of alcohol on the defendant's breath and his glassy eyes; and (3) defendant's statements that he had been drinking heavily on the day prior to the offense and into the early morning hours on June 9. The defendant claims that Oney's and Ross' statements that they did not believe the defendant was intoxicated at the time of interrogation were "clearly unreasonable" and that this is a standard of review promulgated in *People v. Clark*, 92 Ill. 2d 96, 440 N.E.2d 869 (1982), as an exception to the deference normally accorded the trial court.

The trial court is in the best position to determine the credibility of witnesses at a suppression hearing and to resolve any conflicts in the evidence, and its decision will not be reversed on review unless contrary to the manifest weight of the evidence. *People v. Rogers*, 123 Ill. 2d 487, 495, 528 N.E.2d 667, 671 (1988). The fact that the defendant was under the influence of alcohol does not render his statements inadmissible unless the evidence clearly establishes that he was so grossly intoxicated he no longer had the capacity to waive his rights. *People v. Feagans*, 134 Ill. App. 3d 252, 259, 480 N.E.2d 153, 158-59 (1985).

In *Clark*, the supreme court upheld the trial court's denial of a motion to suppress, stating that the trial court's decision would not be disturbed unless clearly erroneous. It then noted that although the trial court failed to state its reasons for denial of the motion to suppress, the trial court apparently found testimony of the officers

more credible than that of the defendant, and the supreme court could find no ground on which to find the officer's testimony clearly unreasonable. *Clark*, 92 Ill. 2d at 99, 440 N.E.2d at 871. Contrary to defendant's interpretation, the *Clark* court at no time indicated it was announcing a new standard of review according less deference to the trial court. Its comments were merely a characterization of the absence of evidence supporting defendant's contention.

In this case the arresting officer testified that defendant did not display any difficulty walking up the church steps with his hands behind his head, or when he was handcuffed and walked to the patrol car, and his speech was normal and coherent. Both Officers Oney and Ross testified that the defendant's speech was not impaired and that he understood the questions put to him during the interview.

As to Oney's statement to Grant, that defendant was "drunker than 18 Indians" at the time of the offense, the trial court determined that Oney expressed an opinion, not based on personal observation or knowledge, but based on information of alcohol consumption supplied by defendant and a witness who had been drinking with defendant during the morning hours of June 9. Since there was considerable evidence to support the trial court's denial of suppression of the defendant's statements, we find its determination not against the manifest weight of the evidence.

■ Defendant last argues that the trial court erred in finding him subject to mandatory natural life sentences under section 5—8—1(a)(1)(c)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West Supp. 1995)) for commission of first degree murder and feticide, contending that natural life sentences are mandatory only when both offenses are "murder," a classification to which the feticide statute does not belong. The feticide statute provides that the "sentence for intentional homicide of an unborn child shall be the same as for first degree murder, except that the death penalty may not be imposed." 720 ILCS 5/9—1.2(d) (West 1994). The sentencing provisions for first degree murder in relevant part provide "the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant *** is found guilty of murdering more than one victim[.]" 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West Supp. 1995).

This court's primary objective when construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute itself. *People v. Tucker*, 167 Ill. 2d 431, 435, 657 N.E.2d 1009, 1011 (1995). Criminal or penal statutes must be strictly construed and may not be extended in their application to

cases that do not, by the strictest construction, come under their provisions. *People v. Parvin*, 125 Ill. 2d 519, 525, 533 N.E.2d 813, 815 (1988). Generally, any ambiguities in a criminal statute must be resolved in favor of the defendant. *People v. Robinson*, 172 Ill. 2d 452, 457, 667 N.E.2d 1305, 1307 (1996).

In *People v. Magnus*, 262 Ill. App. 3d 362, 633 N.E.2d 869 (1994), the reviewing court *sua sponte* raised the question of whether a defendant convicted of one count of first degree murder and one count of second degree murder was subject to mandatory natural life sentences pursuant to a precursor but similar section of the Code. The court found the phrase "murdering more than one victim" ambiguous in that it could either apply only to multiple first degree murders or to all classes of murder of either first or second degree. *Magnus*, 262 Ill. App. 3d at 366, 633 N.E.2d at 873. The court construed the statute as applying only to multiple first degree murders, reasoning that (1) when section 5—8—1(a)(1)(c) was adopted, there was only one category of murder because second degree murder was designated voluntary manslaughter; and (2) rules of statutory construction mandate that ambiguities in penal sentences be resolved in favor of the defendant. *Magnus*, 262 Ill. App. 3d at 366-67, 633 N.E.2d at 873-74.

Even though the *Magnus* court found an ambiguity within the first degree murder sentencing statute as to whether it encompassed second degree murder, there is no express direction within the second degree murder statute—as there is in the feticide statute—directing sentencing to be imposed "the same as for first degree murder." 720 ILCS 5/9—1.2(d) (West 1994). Since the feticide statute mandates application of the first degree murder penal scheme, we find no ambiguity under that statute's natural life imprisonment penalty merely because it references "murder." If the legislature did not contemplate that the clause "found guilty of murdering more than one victim" in the sentencing provisions for first degree murder would encompass feticide, there would have been no reason for it to expressly exempt the death penalty, since provisions authorizing imposition of the death penalty also apply when "the defendant has been convicted of murdering two or more individuals." 720 ILCS 5/9—1(b)(3) (West 1994). Both clauses reference "murder," yet the legislature chose to except only the death penalty, and not mandatory natural life imprisonment, as sentencing options applicable to the feticide statute. Where a statute is unambiguous, the court may not read into it exceptions other than those provided by the legislature. *Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4*, 215 Ill. App. 3d 506,

511, 575 N.E.2d 556, 559 (1991). The legislature provided only one exception, the death penalty, to the sentencing provisions applicable to feticide, and this court can add no other.

Defendant's convictions and sentences are affirmed.

Affirmed.

GARMAN and KNECHT, JJ., concur.