162 F.3d 491
 John COE, individually, on behalf of Infant Coe, and on
behalf of all others similarly situated to John
Coe and all others similarly situated to
Infant Coe, Plaintiff-Appellant,
v.
COUNTY OF COOK, et al., Defendants-Appellees.
 No. 98-1164.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 17, 1998.
Decided Dec. 4, 1998.
 
 Robert J. Dargis, Mallen & Associates, Chicago, IL, for Plaintiff-Appellant.
 Richard A. Devine, Allen Kirsh, Office of the State's Attorney of Cook County, Chicago, IL, for Defendants-Appellees.
 Before POSNER, Chief Judge, and CUMMINGS and DIANE P. WOOD, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 Cook County, Illinois, owns the Cook County Hospital, which caters primarily to what used to be called "charity" patients; it does not turn away patients on the ground of inability to pay. In 1992 the County issued guidelines for the performance of abortions at the hospital. The guidelines track the Supreme Court's current views on the permissible scope of state regulation of abortions, and thus do not require notice to or the consent of the father of a fetus that the mother wants to abort. Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 887-98, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In 1995, a woman whom the plaintiff John Coe (a pseudonym) had impregnated, but to whom he was not married, had an abortion at the Cook County Hospital, and Coe was not notified. In this suit for damages under 42 U.S.C. § 1983, Coe argues that the hospital's policy of performing abortions without notice to and other safeguards for fathers in his position violates his federal constitutional and state statutory rights and those of the aborted fetuses, on whose behalf the suit is also brought. The district court dismissed Coe's federal claims under Fed.R.Civ.P. 12(b)(6) and then relinquished jurisdiction over his state-law claims under 28 U.S.C. § 1367(c)(3).
 
 
 2
 So far as appears, all the abortions that Coe wishes to impede are privileged by the Supreme Court's decisions defining the constitutional right of abortion, in the sense that a state could not forbid these abortions; for Coe does not know the age of "his" fetus when it was aborted, and the mother's right to abort a fetus that has not yet become viable is essentially absolute. Since, however, Cook County Hospital is not required to perform abortions at all (it did not do so for a period ending with the adoption of the challenged guidelines), we may assume without having to decide that it could limit itself to performing a subset of privileged abortions--that it could, for example, tell women that if they want an abortion at Cook County Hospital they must agree to notification of the father--since there is no constitutional right to obtain any abortion at public expense. Rust v. Sullivan, 500 U.S. 173, 192-93, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); Webster v. Reproductive Health Services, 492 U.S. 490, 511, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989); Harris v. McRae, 448 U.S. 297, 325, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); Poelker v. Doe, 432 U.S. 519, 521, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977); Maher v. Roe, 432 U.S. 464, 474, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). That is, we may assume that it would not be unconstitutional for Cook County Hospital to accede to Coe's demand that it stop performing abortions of which the fathers have no notice. Whether that demand has any constitutional backing is a separate question; the only point we are making now is that the constitutional right to abortion does not automatically cut off Coe's claim.
 
 
 3
 We are mindful that in constitutional law the greater power does not always include the lesser. The power of Cook County Hospital to discontinue all abortions does not necessarily entail a power to discontinue just those abortions of which the fathers are not notified. The fact that the government could abolish the postal service and make the carriage of mail an entirely private activity would not entitle it to detain mail containing "communist propaganda." Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); see also Board of County Commissioners v. Umbehr, 518 U.S. 668, 674-75, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). But that is because the effect of granting such an entitlement would be to impair the market in ideas or opinions. It would have this effect because of the lack of good substitutes for postal service (especially back when Lamont was decided) and because of the unlikelihood that the service would be privatized in response to a ruling protecting the mailing of communist propaganda. It is not at all clear that permitting Cook County Hospital to pick and choose among abortions would burden the right to an abortion as much as permitting the postal service to censor mail would burden the right of free speech. For if Cook County Hospital were forbidden to impose a notification requirement, it might very well decide, as it would have a perfect right to do, to perform no abortions at all--which was in fact its policy before 1992. In that event, forbidding it to pick and choose would be a Pyrrhic victory for women seeking abortions. Cf. Chicago Acorn v. Metropolitan Pier & Exposition Authority, 150 F.3d 695, 704 (7th Cir.1998). Forbidding the postal service to censor communist propaganda was not a Pyrrhic victory for free-speech advocates because it was out of the question that the government would respond by getting out of the mail business, with the consequence that all mail would be carried by private carriers who would be free to censor communist propaganda because the First Amendment does not constrain private conduct.
 
 
 4
 We need not pursue this issue of "unconstitutional conditions." Whatever the rights of the hospital are, we do not see how, as a matter of either legal logic or common sense, the constitutional right of a woman to have an abortion without interference from the man who impregnated her can coexist with a constitutional right of the man to interfere. Although the cases do recognize family relations as a form of "liberty" within the meaning of the due process clauses, e.g., Moore v. East Cleveland, 431 U.S. 494, 499, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion); Ellis v. Hamilton, 669 F.2d 510, 512-14 (7th Cir.1982), they have refused to extend this recognition to the bare biological relation between father and child, Lehr v. Robertson, 463 U.S. 248, 261-62, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); Michael H. v. Gerald D., 491 U.S. 110, 123-30, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (plurality opinion); Pena v. Mattox, 84 F.3d 894, 899-900 (7th Cir.1996); Crumpton v. Gates, 947 F.2d 1418 (9th Cir.1991), let alone to the relation between a father and a fetus. But even if they would take this large step, perhaps in a case in which the father could prove that he would have established a loving and intimate relationship--a family relationship in the fullest sense--with the child that the fetus would have become if not aborted, Coe would lose. In establishing the constitutional right of a woman to have an abortion without having to notify the father, the Supreme Court necessarily as well as explicitly weighed the woman's interest in reproductive freedom against the man's interest in potential paternity, and found the former interest to be the weightier. Planned Parenthood of Southeastern Pennsylvania v. Casey, supra, 505 U.S. at 896, 112 S.Ct. 2791; Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 71, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). "Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two [the man and the woman], the balance weighs in her favor." Id. Coe envisages a situation in which a woman has a right to have an abortion at a private hospital without notifying the father--since the State of Illinois and its subdivisions could not constitutionally impose such a requirement--but is constitutionally debarred from having such an abortion at a public hospital. If a father's right to notice had the constitutional heft that Coe believes it has, it would have been irrational for the Supreme Court to forbid the states to require such notice of private hospitals.
 
 
 5
 Indeed, Coe's argument implies, though he does not contend, that it is unconstitutional for a public hospital to perform any abortions. Since no woman has a constitutional right to have an abortion at public expense, or in a public hospital, the only constitutional interest in play in this case, in Coe's view, is the interest (however attenuated) of the father, and perhaps the fetus, in the fetus's survival. It is true that because the Constitution in general constrains only state action, the same acts that are prohibited to the state may be permitted to private entities. What is unusual is the implication of Coe's argument that conduct which the Constitution forbids to states is the very conduct that the Constitution forbids the states to prohibit private persons from engaging in. Unusual; not unprecedented. A state can neither forbid nor endorse religion and can neither censor nor forbid private "censorship" (for example, a newspaper's exercise of editorial judgment). But that is because either form of intervention in the religious or speech realms impairs weighty constitutional values. The father's interest in the survival of his fetus has not been deemed such a value. If it were, it would entitle the states to impose a notification requirement on private as well as public hospitals and abortion clinics.
 
 
 6
 And again, if the fetus's right to life, which Coe seeks to represent, were deemed to outweigh the pregnant woman's interest in being allowed to make the choice for abortion without being impeded by the father of the fetus (here not even the husband), the Supreme Court would not have forbidden the states to require such notification. And anyway the life, liberty, and property that the due process clauses protect are rights of persons, and the courts have decided that a fetus is not a person within the meaning of these clauses. Roe v. Wade, 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Reed v. Gardner, 986 F.2d 1122, 1128 (7th Cir.1993); Alexander v. Whitman, 114 F.3d 1392, 1400 (3d Cir.1997); Crumpton v. Gates, supra, 947 F.2d at 1421; Planned Parenthood of Southeastern Pennsylvania v. Casey, supra, 505 U.S. at 913, 112 S.Ct. 2791 (concurring opinion). This conclusion follows inevitably from the decision to grant women a right to abort. If even a first-trimester fetus is a person, surely the state would be allowed to protect him from being killed, at least if the mother's life would not be endangered by forbidding the abortion. But of course the state is not allowed to do this.
 
 
 7
 Coe argues that certain rights (of which more later) that Illinois confers on fetuses are enforceable in federal court by virtue of 42 U.S.C. § 1988, which so far as relevant here allows federal courts in suits under section 1983 to borrow remedies from state law. Robertson v. Wegmann, 436 U.S. 584, 588-90, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); Bell v. City of Milwaukee, 746 F.2d 1205, 1234 (7th Cir.1984); Coyne-Delany Co. v. Capital Development Board, 717 F.2d 385, 394 (7th Cir.1983). Remedies, not rights. Moor v. County of Alameda, 411 U.S. 693, 703-04, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). Otherwise section 1988 would undo the limits that the courts have placed on the federalization under section 1983 of rights conferred by state law. In Paul v. Davis, 424 U.S. 693, 711-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Court held that the interest in reputation that is protected by state defamation law is not protected by the Constitution, and so defamation by state employees is not actionable under section 1983. If Coe's interpretation of section 1988 is right, Paul v. Davis and a myriad of like cases illustrated by DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), and Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), are wrong, because under that interpretation any right under state law against a state's agencies or employees is enforceable in a federal suit based upon section 1983.
 
 
 8
 Coe argues in the alternative that the Cook County Hospital's abortion guidelines are unconstitutionally vague because they permit second-trimester abortions on the basis of "a severe fetal anomaly." If the term is really vague, it is conceivable though unlikely that some fetuses that their mothers do not have a constitutional right to abort without parental notification may nevertheless be aborted without such notification. It is unlikely because Illinois abortion law, to which the hospital is fully subject so far as that law is constitutional, goes up to the constitutional limit in preventing abortions. See 720 ILCS 5101 (statement of legislative intention). The hospital is forbidden to perform abortions not privileged by the Constitution. But even if the hospital has left the safe harbor created by the Supreme Court's decisions and is performing abortions to which women have no right, and even if in doing so it is stepping on the rights of men in the fetuses whom they father (if there are such rights), Coe cannot prevail. And this for several reasons.
 
 
 9
 First, he has no right to complain about the vagueness of the guideline. Statutes and other enactments present a constitutional issue of vagueness when they deter constitutionally protected activity, fail to provide even minimum guidance as to people's legal obligations, or give law enforcers excessive discretion that might be exercised in arbitrary or invidious ways. Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Planned Parenthood of Wisconsin v. Doyle, 162 F.3d 463, 469 (7th Cir.1998); Kucharek v. Hanaway, 902 F.2d 513, 518 (7th Cir.1990). The complaint invariably is about the impropriety of punishing a person for violating a vague statute or regulation. We cannot find a case in which an enactment was challenged as vague merely because it failed to prohibit activity (here some abortions) that harmed the plaintiff. Anyway it is not the guideline's vagueness that bothers Coe but the fact that the guideline does not clearly forbid abortions that may not be constitutionally privileged. If by performing these abortions physicians at Cook County Hospital are violating Coe's rights, he should have a remedy; but the guideline is neither here nor there. If the Constitution prohibits an activity, there is no constitutional requirement that the state prohibit it as well.
 
 
 10
 Second, Coe has not alleged that the fetus that he fathered is a second-trimester fetus, and so he has not shown that the alleged vagueness of the hospital's guidelines is a potential harm to him. Village of Hoffman v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Illinois Council on Long Term Care Inc. v. Shalala, 143 F.3d 1072, 1077 (7th Cir.1998); Baer v. City of Wauwatosa, 716 F.2d 1117, 1124 (7th Cir.1983). Third, he has offered no argument or authority for deeming the term "severe fetal anomaly" vague. For all that appears, either it has a well-settled medical meaning, or it is as precise as the phenomenon that it seeks to identify permits. See United States v. Vuitch, 402 U.S. 62, 71-72, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); United States v. Petrillo, 332 U.S. 1, 5-8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); United States v. Soderna, 82 F.3d 1370, 1376-77 (7th Cir.1996); 1 Wayne R. LaFave & Austin W. Scott Jr., Substantive Criminal Law § 2.3, p. 133 (1986). It is true that Coe's suit was dismissed on a motion under Rule 12(b)(6), and so he had no opportunity to present evidence concerning the meaning or usage of the term. But at oral argument he acknowledged that he has no intention of presenting evidence or argument on the point, beyond the suggestion that the burden of showing that the phrase is not vague is on the defendants. That is not a tenable position, especially since, as we noted, the issue really isn't vagueness at all.
 
 
 11
 Plainly what we have in this case is an attempted end run around the Supreme Court's decisions recognizing a broader right of abortion than many people think legally or morally justifiable. These people are entitled to hold such a view, of course; but as it has no basis in federal law as authoritatively construed, the district judge had no choice but to grant the defendants' motion to dismiss the federal claims. And having dismissed them before trial, she naturally relinquished jurisdiction over the state-laws claim to the state court. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 346, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Marzuki v. AT & T Technologies, Inc., 878 F.2d 203, 206 n. 3 (7th Cir.1989). Ordinarily that would be the end of the matter. But, as it happens, those claims are so entangled with the federal claims that the rejection of the latter probably entails rejection of the former as well. And when a state-law claim is clearly without merit, it invades no state interest--on the contrary, it spares overburdened state courts additional work that they do not want or need--for the federal court to dismiss the claim on the merits rather than invite a further, and futile, round of litigation in the state courts. Sullivan v. Conway, 157 F.3d 1092, 1095 (7th Cir.1998); Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993).
 
 
 12
 The state-law issue is whether Cook County Hospital's refusal to notify the father of a fetus of an impending abortion violates any rights (the rights that Coe argues, unsuccessfully in our view, are federalized by 42 U.S.C. § 1988) conferred on fetuses by the statutory or common law of Illinois. Like most states, Illinois provides civil and criminal sanctions for injuring or killing fetuses. 720 ILCS 5/9-1.2, 2.1,3.2; 5/12-3.1, 4.4; 9-1.2, 2.1, 3.2; 12-3.1, 12-4.4; 740 ILCS 180/2.2. If you shoot and kill a pregnant woman, and the bullet causes the death of the fetus as well, either directly or (as by cutting off the supply of oxygen from the mother) indirectly, you are guilty of feticide as well as murder and are subject to severe civil and criminal sanctions. People v. Shoultz, 289 Ill.App.3d 392, 224 Ill.Dec. 885, 682 N.E.2d 446 (Ill.App.1997); People v. Halmon, 225 Ill.App.3d 259, 167 Ill.Dec. 567, 587 N.E.2d 1182 (Ill.App.1992); People v. Kuchan, 219 Ill.App.3d 739, 162 Ill.Dec. 240, 579 N.E.2d 1054 (Ill.App.1991). Obviously Roe v. Wade and the cases following it did not privilege such conduct. States remain free to punish feticide so long as they don't try to punish a woman who exercises her constitutional right to abort her fetus, the physician who performs the abortion, or the hospital or other facility, even if public, in which the abortion is performed. People v. Shoultz, supra, 682 N.E.2d at 448; cf. Roe v. Wade, supra, 410 U.S. at 162, 93 S.Ct. 705. Any attempt by a state to punish the exercise of a federal right is forbidden by the supremacy clause of the U.S. Constitution. And in fact the state statutes that Coe invokes make an explicit though, in light of the supremacy clause, a superfluous exception for a lawful abortion, which the abortion of Coe's fetus was even though Coe was not notified in advance. Illinois neither could nor purports to give him a right to block such an abortion.
 
 
 13
 But we are drawn up short by the rule in this court, enforced recently in a case quite like this--that is, a case in which it made sense to alter the judgment dismissing the plaintiff-appellant's suit from dismissal without prejudice to dismissal with prejudice--that the court of appeals lacks jurisdiction to enlarge a judgment in favor of the appellee unless the appellee has filed a cross-appeal. Conover v. Lein, 87 F.3d 905, 908 (7th Cir.1996); see also Tredway v. Farley, 35 F.3d 288, 296 (7th Cir.1994). The rule, when conceived of as being jurisdictional and therefore not waivable, has been criticized, not only by the Wright and Miller treatise, which remarks the "astonishing lack of reasoned explanation" for it, 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3904, p. 206 (2d ed.1991), but also by us. Bullard v. Sercon Corp., 846 F.2d 463, 467-68 (7th Cir.1988). A number of cases in other circuits hold that the rule is not jurisdictional and thus need not be applied rigidly. Texport Oil Co. v. M/V Amolyntos, 11 F.3d 361, 366 (2d Cir.1993); Pan-Pacific & Low Ball Cable Television Co. v. Pacific Union Co., 987 F.2d 594, 596 (9th Cir.1993); United States v. Tabor Court Realty Corp., 943 F.2d 335, 342-45 (3d Cir.1991); LaFaut v. Smith, 834 F.2d 389, 394 n. 9 (4th Cir.1987); Hysell v. Iowa Public Service Co., 559 F.2d 468, 476 (8th Cir.1977); Spann v. Colonial Village, Inc., 899 F.2d 24, 33 (D.C.Cir.1990); Tug Raven v. Trexler, 419 F.2d 536, 548 (4th Cir.1969).
 
 
 14
 Since the rule's only purpose is to notify the appellant that the appellee wants to alter and not merely defend the judgment of the district court, there is no compelling reason to enforce it when the appellant has been adequately notified of the appellee's intentions. Rigid enforcement of the rule is thus unnecessary, and has five consequences, all of which are bad. It makes federal law more complicated than it has to be. It increases paperwork, by requiring the appellee as well as the appellant to file a notice of appeal. It increases the number of remands, in cases in which the appellee is tripped up by the rule. It trips up the unwary, as may have happened in this case. And it multiplies the number of cross-appeals, because appellees frequently confuse defending a judgment on new grounds, which doesn't require a cross-appeal, with seeking to alter the judgment in their favor, which does. See, e.g., Byron v. Clay, 867 F.2d 1049, 1050-51 (7th Cir.1989); Jordan v. Duff & Phelps, Inc., 815 F.2d 429, 439 (7th Cir.1987); 15A Wright, Miller & Cooper, supra, § 3904, p. 205.
 
 
 15
 It is high time that we abandoned the rule as a rule of jurisdiction. In this case, however, the appellees' brief did not give the appellant adequate notice of an intention to seek to alter the judgment in the appellees' favor. Their brief does say at one point that the state law claims ought to be dismissed with prejudice, but there is no request to us to alter the judgment accordingly. In this case, then, the requirement of filing a cross-appeal would have served a useful purpose in putting the appellant on his guard, and maybe he could have said something that would show that the state-law claims should be remanded to the state courts after all. We shall decline, then, to alter the judgment.
 
 
 16
 One issue remains to be considered. "John Coe" is a pseudonym (like the more familiar "John Doe"), and in the certificate of interest that a party is required to file in order to enable a judge of this court to determine whether he or she is recused from the case Coe's real name is not listed. It should be. See Doe v. Doe, 282 Ill.App.3d 1078, 218 Ill.Dec. 328, 668 N.E.2d 1160, 1168 (Ill.App.1996). Suppose it turned out that Coe was a close relative of one of the judges, and this was not discovered until after the case was decided. Even though the judge had not known this when hearing and deliberating on the case, the revelation would cast a shadow over the court's impartiality. The certificate should list the party's true name with a notation that the party is proceeding under a pseudonym. Disclosure of the party's true name should also be made in the district court so that the district judge can determine whether to recuse himself; and so far as we can determine that was not done either.
 
 
 17
 There is a deeper issue. We have criticized the overuse of pseudonyms in federal litigation, pointing out that the public has a right to know who is utilizing the federal courts that its tax dollars support. Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir.1997). In a few cases a justified interest in privacy warrants concealment of a litigant's name. But not in most cases (including Doe) and not in this one. Mr. "Coe" may well feel embarrassed about having impregnated a woman to whom he was not married. But the embarrassment felt by a person who engages in immoral or irresponsible conduct is not a compelling basis for a waiver of the general rule that parties to federal litigation must litigate under their real names.
 
 
 18
 AFFIRMED.