186 F.3d 857 (7th Cir. 1999)
 IN RE: BLUFFTON CASTING CORPORATION, formerly known as STERLING CASTING CORPORATION, Debtor-Appellee,
APPEAL OF: PERRY R. COLEMAN, BRIAN KABLE, MAURICE A. MCGEE, et al.
 No. 98-3430
 United States Court of Appeals, Seventh Circuit
 Argued February 23, 1999
Decided August 24, 1999
 
 Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. No. 98 C 109--William C. Lee, Chief Judge.
 Before COFFEY, RIPPLE and ROVNER, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 After Bluffton Casting Corporation ("Bluffton") filed for bankruptcy, some of its employees filed a complaint for declaratory judgment in bankruptcy court regarding the validity, extent and priority of their state law mechanics and employees liens. The claims at issue are based on the Worker Adjustment and Retraining Notification Act ("the WARN Act") and the collective bargaining agreement ("CBA") with Bluffton. The bankruptcy court held that the claims at issue were preempted by the WARN Act or the Labor Management Relations Act ("the LMRA"). The district court affirmed. A further appeal was taken to this court. For the reasons set forth in the following opinion, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 Bluffton Casting Corporation filed a voluntary Chapter 11 petition on January 27, 1997, in United States Bankruptcy Court.[1] At the time of the filing, the employees of Bluffton, who were members of the Glass, Molders, Pottery, Plastics and Allied Worker's International Union, Local 455 ("the employees"), had claims against Bluffton for unpaid wages, vacation pay, health care expenses, pension contributions, disability, and claims relating to a plant closing under both the WARN Act and their collective bargaining agreement. Pursuant to Indiana Code sec.sec. 32- 8-3-1 and 32-8-24-1, the employees filed mechanics and employees liens to secure their claims.[2]
 
 
 4
 The employees commenced an adversary proceeding to determine the extent, validity and priority of their lien claims as against the claims of Bluffton's two secured creditors, Norwest Business Credit, Inc., and Bestway of Indiana, Inc. The employees stated seven different claims. Norwest filed a motion for judgment on the pleadings, contending that the lien claims were preempted by the LMRA, the WARN Act and the Employee Retirement and Income Security Act ("ERISA"). The bankruptcy court granted the motion with respect to all counts relevant to this appeal.[3] The court noted that all of those claims were founded on either the WARN Act or the collective bargaining agreement. The state lien remedies sought were based on these substantive claims.[4] The court held that these state remedies were foreclosed by both the WARN Act and the LMRA.
 
 II
 DISCUSSION
 A. The WARN Act Claims
 
 5
 The WARN Act requires certain employers to give their employees at least 60 days' notice before a plant closing or mass layoff. See 29 U.S.C. sec. 2102(a). If such employers fail to do so, they may be liable for damages, including back pay for each day of violation, lost benefits, costs and attorney's fees. See 29 U.S.C. sec. 2104(a). The Act also provides that "[t]he remedies provided for in this section shall be the exclusive remedy for any violation of this chapter." 29 U.S.C. sec. 2104(b). However, sec. 2105 states that "[t]he rights and remedies provided to employees by this chapter are in addition to, and not in lieu of any other contractual or statutory rights and remedies of the employees, and are not intended to alter or affect such rights and remedies." 29 U.S.C. sec. 2105.
 
 
 6
 Counts I and IV are based on WARN Act violations. Count I alleges that the employees' termination without notice violated the WARN Act and Count IV alleges that Bluffton owes the employees pension benefits under the WARN Act. The employees seek, under state mechanics and employee liens, to establish the priority of their WARN Act claims over the claims of Norwest and Bestway, the secured creditors. Norwest argues that, because the WARN Act forms the substantive basis for the priority liens, the employees' claims cannot be recognized. Such priority remedies are not within the exclusive remedies provided under the WARN Act. See 29 U.S.C. sec. 2104(a).
 
 
 7
 The employees argue that the liens are not foreclosed by sec. 2104(b) because sec. 2105 explicitly states that the WARN Act was not meant to restrict rights or remedies provided in other statutes or contracts. Indiana mechanics and employees liens, they submit, are therefore available as remedies.
 
 
 8
 The bankruptcy court and district court rejected the employees' argument. They harmonized sec. 2104(b) and sec. 2105 by holding that sec. 2104(b) restricts remedies for WARN Act violations to those explicitly listed in sec. 2104(a); section 2105 permits, on the other hand, rights or remedies based on the same facts, as long as the substantive basis for these rights and remedies is not the WARN Act itself. Under this reading of sec. 2104(b) and sec. 2105, the Indiana liens could not provide a remedy for the employees' claims because the WARN Act served as a substantive basis for their claims.
 
 
 9
 The employees argue that the district court erred in holding that the only remedies sec. 2104(b) permits for WARN Act violations are those remedies explicitly listed under sec. 2104(a). They note that two courts have allowed remedies for prejudgment interest under the WARN Act even though that remedy is not explicitly provided for under that Act. See Frymire v. Ampex Corp., 61 F.3d 757, 773 (10th Cir. 1995); Carpenters Dist. Council v. Dillard Dep't. Stores, Inc., 15 F.3d 1275, 1288 (5th Cir. 1994), cert. denied, 513 U.S. 1126 (1995). Another court has allowed a preliminary injunction to be issued under the WARN Act, even though sec. 2104(a) does not explicitly allow injunctions for violations of the Act. See Local 397, Int'l Union of Elec. Workers v. Midwest Fastners, Inc., 763 F. Supp. 78, 81-82 (D.N.J. 1990).
 
 
 10
 We believe that the district court properly reconciled sec. 2104(b) and sec. 2105. The employees' interpretation is inconsistent with the plain language of sec. 2104(b), which states that "[t]he remedies provided for . . . shall be the exclusive remedy." 29 U.S.C. sec. 2104(b) (emphasis added). When the substantive basis for a claim is the WARN Act, the sole remedies available are those provided in sec. 2104(b). On the other hand, claims based on the same set of facts, yet arising out of another substantive right, are not preempted pursuant to sec. 2105. The Second Circuit has adopted this approach to sec. 2104(b). See Local 217, Hotel & Restaurant Employees Union v. MHM, Inc., 976 F.2d 805, 808- 09 (2d Cir. 1992) (preliminary injunction not allowed); see also Finnan v. L.F. Rothschild & Co., 726 F. Supp. 460, 464 (S.D.N.Y. 1989) (punitive damages not allowed).
 
 
 11
 Our conclusion is further supported by the legislative history, which indicates that Congress, when it adopted sec. 2105, merely intended to preserve the effect of other laws and contracts providing substantive rights with respect to plant closings and mass layoffs. The Conference Report states:
 
 
 12
 The Conference Agreement provides that with one exception the rights and remedies provided under the advance notification provisions do not preempt or displace rights and remedies provided under other statutes or under contractual agreements. The Conferees are aware that many legal issues related to plant closings and mass layoffs currently may be addressed under collective bargaining agreements and some of these same issues also may be dealt with under state or other federal law. See, e.g., Fort Halifax Packing Company v. Coyne, 107 S. Ct. 2211 (1987) (ERISA does not preempt state law prescribing severance pay). The Conferees intend that the effect of these other laws and contracts should not be disturbed by the new federal provision.
 
 
 13
 H.R. Conf. Rep. 100-576 (1988), reprinted in 1988 U.S.C.C.A.N. 1547. In enacting sec. 2105, Congress was concerned that other laws creating substantive rights and remedies not be disturbed; there is no hint, however, that Congress intended sec. 2105 to suggest that other laws could provide remedies for WARN Act violations. Indeed, as we have noted, sec. 2104(b) states in clear terms that Congress' intent was to the contrary.
 
 
 14
 In interpreting the statute in this way, we do not mean to express our disagreement with those circuits that have held that an award of prejudgment interest is permissible under the Act. As the Fifth and the Tenth Circuits noted, prejudgment interest merely compensates the plaintiff for the time-value of the damages explicitly provided under the WARN Act. It therefore is a necessary adjunct to the damages remedy available under sec. 2104(a).
 
 
 15
 The employees submit that, even under the district court's approach, they should be able to proceed with their lien remedies. They claim that such liens are similar to prejudgment interest because they are intended to ensure collectibility of probable judgments. We cannot accept this argument. These lien remedies go much further than the prejudgment interest remedy, which is necessary to compensate fully the plaintiffs for the time-value of any damages they may suffer. Indeed, the employees are primarily claiming entitlement to the liens in this case in order to establish the priority of their interest over the interests of secured creditors in a bankruptcy proceeding.
 
 B. The LMRA Claims
 
 16
 The district court noted that the employees' claims that are not based on the WARN Act are based on rights provided under the CBA, including wages, vacation pay, health care expenses and pension contributions. The court held that those claims are preempted by sec. 301 of the LMRA. Section 301 provides:
 
 
 17
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 18
 29 U.S.C. sec. 185(a). It is well established that this jurisdictional provision authorizes federal courts to develop federal common law for the interpretation of collective bargaining agreements. See Lingle v. Norde Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988).
 
 
 19
 Norwest submits that the employees' claims for priority liens that are based on the collective bargaining agreement are preempted. The employees respond that their claims do not require interpretation of the CBA, and therefore are not preempted even if they arise under the CBA.[5] The employees rely on the passage in Lingle that states that "an application of state law is pre- empted by sec. 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective- bargaining agreement." Lingle, 486 U.S. at 413. Moreover, they submit that their claims are not preempted because they are based on Indiana lien statutes, which are themselves independent of the CBA.
 
 
 20
 We cannot accept the employees' submission that the sole test for preemption is whether the claims require analysis of the CBA's terms. Lingle was not a case in which the CBA formed the basis for the claim. Therefore, the Court did not need to emphasize that claims founded on a CBA are preempted. The Court understandably examined only whether the claim in that case, retaliatory discharge for filing a worker's compensation claim, required an examination of the CBA. Indeed, the Supreme Court in Lingle recognized that "[s]ection 301 governs claims founded directly on rights created by collective- bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Id. at 410 n.10 (quoting International Bhd. Elec. Workers v. Hechler, 481 U.S. 851, 859 n.3 (1987)) (emphasis added); see also Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987). Various circuits, including this one, have recognized that a claim may be preempted under the LMRA either because it depends on interpretation of a CBA or because the claim is founded on the CBA. See United States v. Palumbo Bros., Inc., 145 F.3d 850, 863 (7th Cir.), cert. denied, 119 S. Ct. 375 (1998); Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495, 498 (7th Cir. 1996); Marzuki v. AT&T Techs., 878 F.2d 203, 206 (7th Cir. 1989); see also Lopez v. Continental Can Co., 961 F.2d 147, 148-49 (9th Cir. 1992); Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1038 (6th Cir. 1989), cert. denied, 495 U.S. 946 (1990).
 
 
 21
 The plaintiffs are attempting to enforce their rights under the CBA with a state remedy that would give their liens priority in a bankruptcy proceeding. Because the claims are founded on the CBA, they are preempted whether or not they require analysis of the CBA's terms.
 
 Conclusion
 
 22
 For the foregoing reasons, the judgment of the district court is affirmed.[6]
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 Bluffton's Chapter 11 proceeding was subsequently converted into a Chapter 7 proceeding.
 
 
 [2]
 The relevant portion of the mechanics lien statute provides:
 (a) . . . [A]ll claims for wages of mechanics and laborers employed in or about any shop, mill, wareroom, storeroom, manufactory or structure, bridge, reservoir, system of waterworks or other structure, sidewalk, walk, stile, well, drain, drainage ditch or cistern or any other earth-moving operation shall be a lien on all the machinery, tools, stock or material, work finished or unfinished, located in or about such shop, mill, wareroom, storeroom, manufactory or other building, bridge, reservoir, system of waterworks, or other structure, sidewalk, walk, stile, well, drain, drainage ditch, sewer, cistern or earth used in a business.
 (b) If the person, firm, limited liability company, or corporation described in subsection (a) is in failing circumstances, the claims described in subsection (a) shall be preferred debts whether a claim or notice of lien has been filed or not.
 Ind. Code sec. 32-8-3-1. The worker's lien section provides, in part:
 Except as provided in subsection (b), the employees of any corporation doing business in Indiana, whether organized under the laws of this state or otherwise, are entitled to have and hold a first and prior lien upon:
 (1) the corporate property of the corporation; and
 (2) the earnings of the corporation; for all work and labor done and performed by the employees for the corporation, from the date of the employees' employment by the corporation. A lien under this section shall lie prior to any and all liens created or acquired subsequent to the date of the employment of the employees by the corporation, except as otherwise provided in this chapter.
 Ind. Code sec. 32-8-24-1.
 
 
 [3]
 We note that we have jurisdiction over this appeal under 28 U.S.C. sec. 158(d), which governs appeals from bankruptcy court decisions. "Under sec. 158, we treat as final those orders that ultimately determine a creditor's position in the bankruptcy proceeding, even though administration of the debtor's estate continues." In re Forty- Eight Insulations, Inc., 115 F.3d 1294, 1298 (7th Cir. 1997). Although the bankruptcy court originally resolved only 5 of the employees' 7 claims, one of the remaining claims was settled, and the other one has been declared moot by the bankruptcy court. Therefore, the finality requirement is met with respect to the plaintiffs' claims.
 
 
 [4]
 The complaint makes clear that the WARN Act or the CBA is the substantive basis for each of the claims at issue on appeal. The employees make no argument to the contrary on appeal.
 
 
 [5]
 The employees do not dispute on appeal the district court's determination that the lien remedy sought is founded on a claim under the CBA. They do contend, however, that only a brief analysis of the CBA is required to establish their claims. However, because we hold that the claims are preempted because they are founded on the CBA, it is not necessary for us to determine the extent to which the claims require an analysis of the CBA's terms.
 
 
 [6]
 The parties also briefed the issue whether ERISA preempts Count IV. Because we affirm the district court's judgment that Count IV is preempted on other grounds, we need not address whether it is also preempted under ERISA.