2021 IL App (1st) 182672-U

No. 1-18-2672

Order filed December 29, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07CR8129 |
| | ) | |
| REGINALD LANE, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court over defendant's contention that the trial court erred in sentencing him to a term of natural life imprisonment on the basis that he was found guilty of murdering more than one victim where defendant was found guilty of the first degree murder of one victim and the intentional homicide of an unborn child.

¶ 2    Following a bench trial, defendant Reginald Lane was found guilty of the first degree murder of Jwonda Thurston (Jwonda) and the intentional homicide of her unborn child, after fatally

shooting Jwonda in the head during a confrontation with police. At a subsequent sentencing hearing, the circuit court sentenced defendant to two concurrent terms of natural life imprisonment.

¶ 3 On appeal, defendant does not contest the sufficiency of the evidence to sustain his conviction, but asserts that the trial court erred in finding that he was subject to mandatory natural life sentencing because he was found guilty of murdering more than one victim. See 730 ILCS 5-8-1(a)(1)(c)(ii) (West 2016) ("For first degree murder, the court shall sentence the defendant to a term of natural life imprisonment if the defendant, at the time of the commission of the murder, had attained the age of 18, and is found guilty of murdering more than one victim."). Defendant contends that the plain language of the statute contemplates the murder of more than one victim, and defendant's intentional homicide of the unborn child was not a murder, and the unborn child was not a victim, as those terms are defined in the relevant statutory sections. Defendant contends that we should therefore remand this matter for a new sentencing hearing. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4 I. BACKGROUND

¶ 5 A. Trial Evidence

¶ 6 The facts from defendant's trial are not in dispute. The record shows that in March 2007, defendant drove Jwonda and her three children to Jwonda's sister, June Thurston's (June), apartment in Riverdale, Illinois. At the time, defendant knew that Jwonda was three-months pregnant with his child. That night, Jwonda had plans to meet a friend of hers, Natasha Johnson, while June watched the children. However, according to June, when defendant and Jwonda arrived at June's apartment, defendant told Jwonda that he did not want her to go out. Defendant told Jwonda that if she left the apartment, he would "kill her." When Jwonda did not arrive to meet

Johnson, Johnson called her to ask where she was. During the phone call, Johnson could hear arguing in the background. Johnson drove to June's apartment.

¶ 7    When Johnson arrived, she saw Jwonda crying in the corner of the room and defendant was in front of her "arguing." Johnson went to Jwonda to console her, and told Jwonda they could leave if she wanted to leave. Defendant said that Jwonda was not going anywhere. Johnson tried to push Jwonda toward the door, but she would not leave. Johnson's phone rang, and she answered, but then defendant took her phone and told everyone to sit down. Johnson saw that defendant had a gun in his hand. After about an hour, Johnson left the apartment. Defendant told Johnson that if she contacted police, he would hurt Jwonda.

¶ 8    Johnson drove away from the apartment and then flagged down Riverdale police officer Mark Kozeluh. Johnson told Officer Kozeluh what was happening in the apartment. From inside the apartment, June, who was standing with defendant, could see that Johnson was talking to the police outside. Defendant told June that if Johnson told the police what was happening inside the apartment, he was going to kill Jwonda. Defendant called Johnson's cellphone and asked her why she contacted the police because he told her to not talk to police after she left.

¶ 9    Officer Kozeluh called for backup and three other officers responded to the call. Two of the officers went to the front door of the apartment and two went to the backdoor. Two of the officers knocked on the front door and identified themselves as police. Through the door, June told the officers that she needed to get dressed. June testified that she was already dressed, but she lied to police because defendant said that if she opened the door and let the police in, he was going to kill Jwonda. June told defendant to leave through the backdoor and that she would not tell the police anything.

¶ 10    Defendant grabbed Jwonda by the neck and pointed the gun at the back of her head. He started to move Jwonda toward the backdoor. As Jwonda, being pushed by defendant, approached the backdoor, the two officers standing outside told her to raise her hands, which she did. Defendant then shot Jwonda in the back of the head. Defendant ran into the bathroom of the apartment where he was arrested later that morning.

¶ 11    Defendant testified on his own behalf that he did not threaten anyone that evening. He testified that he did not intentionally shoot Jwonda, but he was startled by the appearance of the officers. When he heard the officers outside the door, he attempted to throw his gun away from him, but when he pulled it out of his pocket, it accidentally discharged, and the bullet struck Jwonda.

¶ 12    Following closing argument, the court found defendant guilty of the first degree murder of Jwonda and the intentional homicide of her unborn child. The court also found that during the commission of those offenses, defendant personally discharged a firearm that resulted in great bodily harm or death. The court found that the State's witnesses testified credibly, while defendant's credibility was "highly questionable" and that he "lack[ed] veracity throughout the majority, if not all, of his testimony."

¶ 13                                B. Sentencing

¶ 14    Prior to sentencing, defense counsel filed a "Motion to Prohibit a Natural Life Sentence." In the motion, counsel noted that a natural life sentence is mandatory under section 5-8-1 of the Code where a defendant is found guilty of murdering more than one victim. 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2016). Counsel asserted that because defendant was convicted of first degree murder and intentional homicide of an unborn child, he was not convicted of "murdering" more

than one victim. Counsel contended that defendant was therefore not subject to mandatory natural life sentencing.

¶ 15    In arguing on the motion before the trial court, defense counsel contended that defendant was not convicted of murdering two victims. Rather, he was convicted of murdering Jwonda, and the homicide of "someone else." Defense counsel noted that homicide and murder are two separate offenses with different penalties and different applications.

¶ 16    In response, the State pointed out that the intentional homicide of an unborn child statute provides that the penalty for the offense "shall be the same as first degree murder." See 720 ILCS 5/9-1.2(d) (West 2016). The State asserted that "we have the first degree murder of Miss Jwonda, and we have the penalty that shall be the same as first degree murder" for the intentional homicide of the unborn child. The State contended that defendant would therefore be subject to a sentence of mandatory natural life.

¶ 17    Defense counsel replied that the fact that statute provides that the sentence for intentional homicide of an unborn child shall be the same as for first degree murder is a different consideration than whether defendant was *convicted* of murder.

¶ 18    In ruling on the motion, the court relied on *People v. Kuchan*, 219 Ill. App. 3d 739 (1991). The court briefly recited the facts of that case, noting that the defendant in that case choked the mother to death when she was seven months pregnant. The defendant was found guilty of first degree murder and intentional homicide of an unborn child. The trial court imposed a term of natural life imprisonment and this court affirmed. The circuit court concluded that "[b]ecause it was not improper to impose natural life for those offenses, the court is of the same opinion it is not improper for this court to impose a sentence of natural life for first degree murder as well as the intentional homicide of an unborn child." The court therefore denied defendant's motion.

¶ 19    At defendant's sentencing hearing, the parties first discussed the applicable sentencing range. Defense counsel again objected to suggestion that defendant was subject to a mandatory sentence of natural life imprisonment under the theory that he was found guilty of murdering more than one victim. Defense counsel distinguished *Kuchan*, noting that the trial judge in that case sentenced defendant to natural life because the offense was "accompanied by exceptional[ly] brutal or heinous behavior indicative of wanton cruelty." Defense counsel also argued that for the purposes the intentional homicide of an unborn child statute (720 ILCS 5/9-1.2 (West 2016)), the definition of "person" does not include the pregnant woman whose child is killed. Defense counsel asserted that therefore the mother should not be included when the unborn child dies in determining whether more than one person is murdered. Defense counsel maintained that this was a single act, and a single gunshot, and the fact that the unborn child died was simply a product of the mother dying. Defense counsel continued that "[t]wo victims should mean two separate acts." The State responded again citing the language of the statute that the intentional homicide of an unborn child shall be sentenced the same as first degree murder. The court concluded the oral argument by stating, "I believe the legislature has resolved that issue, and case law has also addressed this very same issue, so we shall proceed to sentencing."

¶ 20    In arguing in aggravation, the State asserted that defendant should be sentenced to natural life imprisonment because he caused the death of more than one victim. The State also noted that defendant caused serious bodily harm, had a prior history of delinquency, and because Jwonda was pregnant at the time, she was considered a person with a physical disability under the law.[1]

---

[1]We note that defense counsel contested the State's characterization of pregnant women as disabled persons.

¶ 21    In mitigation, defense counsel argued that defendant had a very difficult upbringing. Defendant's mother was a drug addict and had problems with mental health. Defendant's father was a police officer, but did not live with him. Defense counsel further argued that this was a situation where defendant's emotions got the best of him and he did not kill Jwonda in cold blood. Defense counsel represented that defendant was "remorseful, contemplative, subdued, sad." Defendant spoke at length in allocution, apologizing to Jwonda's family, recognizing that he failed his family, and acknowledging that he made an inexcusable mistake.

¶ 22    In determining defendant's sentence, the court acknowledged that defendant's life had not been "a bed of roses," based on his separation from his father, his mother's drug addiction, and defendant's involvement with the Department of Children and Family Services. The court observed that despite all of that, defendant was gainfully employed at the time of the incident. The court noted defendant's level of remorse and acceptance, which the court found was "unusual" in situations such as this one. In aggravation, the court noted that defendant's conduct caused serious harm. The court observed that defendant was in committed relationship with Jwonda, who he knew was pregnant. The court noted that Jwonda was the mother of three additional children, "all tender and young in age."

¶ 23    The court recounted that it had found defendant guilty of first degree murder and intentional homicide of an unborn child. "The law says that in a situation such as this that I must impose natural life. **** [I]n this instance the statute is 730 ILCS 5/5-8-1(a)(i)(c)[(ii)], requires me to sentence you to natural life on both." The court thus sentenced defendant to two concurrent terms of natural life imprisonment. Defendant filed a motion to reconsider, in which he argued that the court erred in finding that a term of natural life was required by statute. The court denied the motion. This appeal follows.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant solely contends that the trial court erred in finding that he was required to be sentenced to a term of natural life imprisonment based on the first degree murder of Jwonda and the intentional homicide of her unborn child. Defendant asserts that the plain language of the statutes at issue support his contention that he was not found guilty of murdering more than one victim. Defendant asserts that intentional homicide is not synonymous with murder and that the unborn child was not a "victim" as the term is defined in the Unified Code of Corrections and related statutes. Defendant further contends that, in the event we find the statute to be ambiguous, several tenets of statutory interpretation support his contentions.

¶ 26                                    A. Statutes

¶ 27    Before we may address the merits of defendant's claim, we must first review the statutes at issue here. First, section 9-1.2 of the Criminal Code of 2012 (Criminal Code) provides that a person who commits the offense of intentional homicide of an unborn child "shall be sentenced the same as for first degree murder." 720 ILCS 5/9-1.2(d) (West 2016). The lone exception to this sentencing scheme is that the death penalty may not be imposed. 720 ILCS 5/9-1.2(d)(1) (West 2016). Subsection (d) further provides for sentencing enhancements that may be imposed if the defendant uses a firearm in the commission of the offense. 720 ILCS 5/9-1.2(d)(2)-(4) (West 2016).

¶ 28    Next, section 5-8-1 of the Unified Code of Corrections provides that, for first degree murder, the court "shall" sentence the defendant to a term of natural life imprisonment if the defendant is "found guilty of murdering more than one victim." 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2016).

¶ 29                          B. Murdering More than One Victim

¶ 30    Defendant contends that the circuit court erred in finding that the confluence of the two statutes cited above required that defendant be sentenced to a mandatory term of natural life imprisonment. Defendant asserts that although section 9-1.2 provides that a person who commits the offense of intentional homicide of an unborn child shall be sentenced the same as for first degree murder, this does not thereby transform a conviction for intentional homicide of an unborn child into a conviction for murder. Defendant maintains that section 5-8-1(a)(1)(c)(ii) applies only where a defendant is convicted of two murders, not one murder and one intentional homicide. Defendant also contends that the circuit court erred in relying on *Kuchan*, where the circumstances in that case are distinguishable from the case at bar.

¶ 31    The State responds that the court properly sentenced defendant to a mandatory natural life term of imprisonment. The State maintains that this court's decision in *People v. Shoultz*, 289 Ill. App. 3d 392 (1997) is dispositive of the issue before us.

¶ 32    We will first examine this court's ruling in *Shoultz*, which the State asserts is controlling. In *Shoultz*, the defendant, as defendant here, was convicted of first degree murder and the intentional homicide of an unborn child. *Id.* at 393. The circuit court sentenced defendant to a term of natural life imprisonment. *Id.* On appeal to this court, the defendant alleged, *inter alia*, that the circuit court erred in finding that he was subject to mandatory natural life sentencing pursuant to section 5-8-1(a)(1)(c)(ii). *Id.* at 397. Like the intentional homicide of an unborn child statute in the case at bar, the previous version of the intentional homicide of an unborn child statute also provided that the "sentence for intentional homicide of an unborn child shall be the same as for first degree murder, except that the death penalty may not be imposed." 720 ILCS 5/9-1.2(d) (West 1994). *Id.* at 397.

¶ 33 In addressing the defendant's claim, the *Shoultz* court reviewed this court's ruling in *People v. Magnus*, 262 Ill. App. 3d 362 (1994). In *Magnus*, the defendant was convicted of one count of first degree murder and one count of second degree murder. *Id.* at 364. The question on appeal was whether the defendant was subject to mandatory natural life sentencing pursuant to an earlier, but similar, version of section 5-8-1(a)(1)(c)(ii). *Id.* at 365. The court determined that the defendant was not subject to mandatory natural life sentencing because the statute applied only to multiple first degree murders. *Id.* at 366-67.

¶ 34 The *Shoultz* court distinguished *Magnus* finding that the intentional homicide of an unborn child statute contained a provision specifically directing that the sentence imposed be the same as for first degree murder. *Shoultz*, 289 Ill. App. 3d at 398. The court noted that there was not a similar provision in the second degree murder statute at issue in *Magnus*. *Id.* The court reasoned that:

> "Since the feticide statute mandates application of the first degree murder penal scheme, we find no ambiguity under that statute's natural life imprisonment penalty merely because it references 'murder.' If the legislature did not contemplate that the clause 'found guilty of murdering more than one victim' in the sentencing provisions for first degree murder would encompass feticide, there would have been no reason for it to expressly exempt the death penalty, since provisions authorizing imposition of the death penalty also apply when 'the defendant has been convicted of murdering two or more individuals. 720 ILCS 5/9-1(b)(3) (West 1994). Both clauses reference 'murder,' yet the legislature chose to except only the death penalty, and not mandatory natural life imprisonment, as sentencing options applicable to the feticide statute." *Id.*

The court concluded that the statute was unambiguous and the court could not read into the statute an exception that was not explicitly provided by the legislature. *Id.* The court therefore affirmed the circuit court's imposition of a natural life sentence. *Id.* at 399.

¶ 35    The State maintains that *Shoultz* is controlling and we should not depart from the reasoning therein. We observe that few cases outside of *Shoultz* have addressed the question raised in that case and in the case at bar. Other cases, however, like *Magnus*, have explored the question of whether the defendant may be subject to mandatory life sentencing where he commits first degree murder and second offense similar, but not precisely, first degree murder.

¶ 36    For instance, *People v. West*, 323 Ill. App. 3d 858, 859 (2001), concerned a previous version of section 5-8-1(a)(1)(c)(i) of the Unified Code of Correction (730 ILCS 5/5-8-1(a)(1)(c)(i) (West 1998)). That section provided that the circuit court shall sentence a defendant to a term of natural life imprisonment where defendant is convicted of a first degree murder and had previously committed "first degree murder under any state or federal law." 730 ILCS 5/5-8-1(a)(1)(c)(i) (West 1998).[2] In *West*, the defendant pled guilty to a charge of murder in 1978. *West*, 323 Ill. App. 3d at 859. In 1986, the defendant was found guilty of another murder and sentenced to death. *Id.* The defendant appealed the second conviction and sentence. *Id.* at 860. Our supreme court affirmed the conviction, but remanded to the trial court for the imposition of a sentence other than death. *Id.* On remand, the trial court held that the precursor to section 5-8-1(a)(1)(c)(i) mandated that defendant be sentenced to a term of natural life imprisonment. *Id.* Defendant again appealed from

[2]The current version of the statute provides that the court shall sentence a defendant convicted of first degree murder to a term of natural life imprisonment if the defendant "has previously been convicted of first degree murder under any state or federal law." 730 ILCS 5/5-8-1(a)(1)(c)(i) (West 2016)

his sentence. *Id.* On appeal, this court framed the issue as a question of statutory interpretation. *Id.* at 859. The court set out the question as:

"When the legislature prescribed a sentence of natural life in prison for a first degree murder committed by a person who had previously committed 'first degree murder under any state or federal law' (730 ILCS 5/5-8-1(a)(1)(c)(i) (West 1998)), did the legislature mean the sentencing provisions to apply only if the state had named the prior conviction as one for 'first degree murder'?" *Id.*

The court observed that in 1986, the legislature renamed the offense of murder to first degree murder. *Id.* The court observed that the legislature also amended the sentencing provision for murder, and the amended statute provided that if the defendant, who is convicted of first degree murder, had previously been convicted of first degree murder under any state or federal law, then the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed. *Id.* at 859-60 (citing 730 ILCS 5/5-8-1(a)(1)(c)(i) (West 1998)).

¶ 37 The defendant argued that in 1978, he pled guilty to "murder" not to first degree murder, and therefore section 5-8-1(a)(1)(c)(i) should not apply. *Id.* at 860. The court compared the version of the "murder" statute that was in effect at the time defendant pled guilty with the definition of first degree murder and found that the two sections were "identical," except in how the newer section used the term "second degree murder" instead of "voluntary manslaughter." *Id.* at 860-61. The court determined that when defendant pled guilty to murder in 1978, "he admitted he committed a crime identical to that named 'first degree murder' in the present statues." *Id.* at 861.

¶ 38 The defendant contended that the legislature could have provided that any conviction under a law substantially similar to the first degree murder statute would qualify for a mandatory natural life sentence, as the legislature did for the death penalty statute, but the legislature did not

unambiguously establish the intention to mandate life imprisonment for offenders convicted of " 'murder' " rather than " 'first degree murder.' " *Id.* The *West* court observed that the court was presented with a similar question in *Shoultz. Id.* The *West* court found that in *Shoultz*, the court found that "the statutory scheme, which imposed the same penalties for feticide as for first degree murder, unambiguously showed the intention to treat feticide as a form of murder for the Unified Code of Corrections." *Id.* The *West* court determined that the same result was warranted where the "legislature unambiguously expressed an intention to treat murder convictions under the prior statute as convictions for first degree murder under the current statute." *Id.*

¶ 39    The combination of *Shoultz* and *West* would therefore suggest that the trial court here was correct in finding that defendant was subject to mandatory life sentencing where he was convicted of both first degree murder and intentional homicide of an unborn child, which shall be sentenced the same as first degree murder. We must recognize, however, that one reason for the dearth of relevant authority on this issue is due to the fact that in some instances where the defendant is convicted of both first degree murder and intentional homicide of an unborn child, the trial court does not impose a sentence of natural life imprisonment, and the issue of a mandatory natural life sentence does not appear to be raised, even though authority such as *Shoultz* and *West* would suggest that such sentence should be mandatory under section 5-8-1(a)(1)(c)(ii). For instance, in *People v. Campos*, 227 Ill. App. 3d 434, 438 (1992), the defendant was convicted of the first degree murder of his wife and the intentional homicide of an unborn child. The court did not sentence defendant to a mandatory term of natural life, but instead sentenced defendant to concurrent terms of 35 years' imprisonment for each offense. *Id.* See also, *People v. Tijerina*, 381 Ill. App. 3d 1024 (2008) (defendant convicted of first degree murder and intentional homicide of an unborn child and sentenced

to consecutive terms of 60 and 40 years' imprisonment; *People v. Alvarado*, 2012 IL App (1st) 103784-U, ¶ 18 (unpublished order pursuant to Supreme Court Rule 23) (same).

¶ 40    Similarly, there are cases where the defendant is convicted of first degree murder and intentional homicide of an unborn child, is sentenced to natural life imprisonment, but such sentence does not appear to be mandatory based on the confluence of sections 5-8-1(a)(1)(c)(ii) and 9-1.2, and thus the issue is not raised on appeal. See, *e.g.*, *People v. Thomas*, 2020 IL App (1st) 170310; *People v. Minkens*, 2020 IL App (1st) 172808.

¶ 41    Then, there is the matter of *Kuchan*, 219 Ill. App. 3d 739, cited by the trial court as its justification for imposing defendant's sentence here. In *Kuchan*, the defendant was found guilty of murder and intentional homicide of an unborn child and sentenced to an extended term of natural life imprisonment, with a concurrent sentence of 40 years for the intentional homicide of an unborn child. *Id.* at 740. On appeal, the defendant contended, *inter alia*, that the trial court erred in imposing a natural life sentenced for murder. *Id.* at 740-41. The facts from the defendant's trial showed that he choked his wife to death when she was seven months pregnant. *Id.* at 741. The defendant left his deceased wife's body in the bathroom of their apartment for three days while defendant continued to live there. *Id.* The trial court imposed a sentence of natural life finding that the offense was " 'accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id.* at 746. This court agreed with the trial court's finding that " 'this crime was so vile and repulsive as to almost defy description.' " *Id.* at 747. The court concluded that the trial court properly imposed a sentence of natural life. *Id.*

¶ 42    Relying on *Kuchan*, the trial court here found that because it was "not improper" for the trial court in *Kuchan* to impose a natural life sentence, then it would not be improper in the case at bar. However, the question defendant raised in the trial court and the question he raises on appeal

is not a matter of the propriety of a natural life sentence, but whether such sentence was mandatory under the circumstances. The trial court's comments at sentencing leave no doubt that it determined that it was required to sentence defendant to a term of natural life imprisonment. *Kuchan*, however, did not involve a mandatory life sentence and thus represents another situation, like *Thomas* and *Minkens*, cited above, where the defendant is convicted of first degree murder and intentional homicide of an unborn child and a sentence of natural life is imposed, but there is no discussion, either in the trial court or in this court, of whether such a sentence is mandatory based on the statutes involved.

¶ 43    Defendant maintains that the distinction is crucial here because the trial court found significant mitigating factors that could have led it to impose a sentence of less than natural life if it had properly determined that such a sentence was not mandatory. Defendant points out that the trial court noted that defendant appeared to be genuinely remorseful during his statement in allocution and the court mentioned his troubled upbringing, including his mother's drug addiction and his relationship with his father. Defendant asserts that the trial court determined that it was unable to consider those mitigating factors because it erroneously determined that the minimum sentence it could impose was natural life imprisonment.

¶ 44    We find defendant's contentions unpersuasive and find no basis to depart from the well-reasoned decision in *Shoultz*. We find no ambiguity in the statutes and hold that the plain language of section 9-1.2(d) of the Criminal Code and section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections require that a defendant who is found guilty of both first degree murder and intentional homicide of an unborn child is required to be sentenced to a term of natural life imprisonment. The language in section 9-1.2(d) that the sentence for intentional homicide of an unborn child "shall be the same as first degree murder" shows the legislature's intent to punish that offense with the

same severity as first degree murder. The legislature made only one exception to that sentencing scheme, providing that a defendant found guilty of intentional homicide of an unborn child shall not be sentenced to death. As the *Shoultz* court recognized, "the legislature chose to except only the death penalty, and not mandatory natural life imprisonment as sentencing options applicable to the feticide statute." *Shoultz*, 289 Ill. App. 3d at 398.

¶ 45    We find further support for the legislature's intent in the plain language of the statutes. Section 5/9-1.2 of the Criminal Code provides:

> "(a) A person commits the offense of intentional homicide of an unborn child if, in performing acts which cause the death of an unborn child, he without lawful justification:
>
> > (1) either intended to cause the death of or do great bodily harm to the pregnant individual or unborn child or knew that such acts would cause death or great bodily harm to the pregnant individual or unborn child; or
> >
> > (2) knew that his acts created a strong probability of death or great bodily harm to the pregnant individual or unborn child; and
> >
> > (3) knew that the individual was pregnant." 720 ILCS 5/9-1.2(a) (West 2016).

Similarly, section 5/9-1 provides:

> "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> > (1) he or she either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

> (2) he or she knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9-1(a)(1)-(2) (West 2016).

Thus, the language of the intentional homicide of an unborn child statute is almost identical to the language of the first degree murder statute, with the exception that the offender knew the individual was pregnant. Both statutes contemplate the offender's intent to cause death or do great bodily harm or the offender's knowledge that the acts create a strong probability of death or great bodily harm. Indeed, the intentional homicide of an unborn child statute does not even require intent to harm the unborn child, so long the offender intended to harm the pregnant mother while knowing that she was pregnant. This shows the legislature's intent to treat intentional homicide of an unborn child as another form of first-degree murder. As in *West*, we find that the legislature unambiguously expressed an intention to treat convictions under the intentional homicide of an unborn child statute the same as convictions for first degree murder. Thus, where the offense of intentional homicide of an unborn child is to be sentenced the same as first degree murder, and where defendant was found guilty of intentional homicide of an unborn child and first degree murder, pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections, the trial court was required to sentence defendant to a term of natural life imprisonment.

¶ 46    We note that defendant also raises an alternate argument as to why section 5-8-1(a)(1)(c)(ii) should not apply in this case. Defendant points out that the statute refers to the murder of more than one "victim." Defendant asserts that an unborn child is not a "victim" as that term is defined in section 5-1-22 of the Unified Code of Corrections (730 ILCS 5/5-1-22 (West 2016)) and section 3 of the Rights of Crime Victims and Witnesses Act (725 ILCS 120/3 (West 2016)). We observe that defendant did not raise this argument before the trial court. It is well-settled that an issue is

waived on appeal unless a defendant both makes an objection at trial and raises the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant's arguments below, and the trial court's ruling, was based solely on whether defendant's conviction for intentional homicide of an unborn child satisfied section 5-8-1(a)(1)(c)(ii)'s provision that defendant was found guilty of more than one murder. Defendant does not allege that the trial court committed plain error in finding that the unborn child was a victim such that we may excuse his waiver of this claim. See, *e.g.*, *People v. Owens*, 129 Ill. 2d 303, 316 (1989).

¶ 47    Even if we were to consider defendant's alternate contention, we would nonetheless find it unpersuasive. First, we observe that section 9-1.2 of the Criminal Code criminalizes the homicide of an unborn child irrespective of harm to the mother. Thus, when an offender commits intentional homicide of an unborn child and also commits the offense of first degree murder of the mother, there are two separate victims. In addition, this contention is essentially an argument that his convictions violate the one-act, one-crime rule. See *People v. Almond*, 2015 IL 113817, ¶ 47 ("Under [the one-act, one-crime rule] a defendant may not be convicted of multiple offenses based on the same physical act."). Despite defendant's protestations at oral argument before this court, this contention has been considered and rejected by the supreme court in *People v. Shum*, 117 Ill. 2d 317, 363-64 (1987). In *Shum*, like defendant here, the defendant contended that he could not be convicted of both feticide and the killing of the pregnant mother because the feticide arose from the "single physical act" of killing the mother. *Id.* at 363. The supreme court rejected the defendant's contention, finding that: "Our statute defining murder does not require the death of a fetus. [Citation]. In fact, we have held that taking the life of a fetus is not murder under our current statute. [Citation]. Since there were *two victims* involved and feticide is not a lesser included offense of murder, both convictions may stand." (Emphasis added.) *Id.* at 364. Thus, our precedent

is clear that where defendant commits the first degree murder of the pregnant mother and the intentional homicide of an unborn child, there are two distinct "victims." We therefore find no error and we affirm the judgment of the circuit court.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the Circuit Court of Cook County.

¶ 50    Affirmed.