**2023 IL 128269**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128269)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
REGINALD LANE, Appellant.


*Opinion filed October 19, 2023.*


JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Overstreet dissented, with opinion, joined by Justice Holder White.


## OPINION

¶ 1    The Cook County circuit court found Reginald Lane guilty of murder and intentional homicide of an unborn child and held that section 5-8-1 of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2006)), which applies to multiple murders, mandated a sentence of life in prison for the crimes.

The appellate court affirmed. 2022 IL App (1st) 182672, ¶ 48. We hold that section 5-8-1(a)(1)(c)(ii) of the Code does not apply because the trial court found Lane guilty of only one murder. Accordingly, we vacate the sentence and remand for resentencing.

¶ 2                                 I. BACKGROUND

¶ 3        June Thurston agreed to take care of her sister Jwonda Thurston's three children for the evening of March 23, 2007, so that Jwonda could spend some time with her friend, Natasha Johnson. Jwonda's boyfriend, Lane, drove her and her children to June's apartment, but they argued and Jwonda did not meet Johnson as planned. When Johnson called Jwonda, she heard Lane yelling at her. Then Johnson went to June's apartment.

¶ 4        Johnson left June's apartment about an hour later. She found Officer Mark Kozeluh nearby and told him about the domestic disturbance. Kozeluh and three other officers went to June's apartment. Jwonda and Lane started to leave by the back door. A gun in Lane's hand discharged, killing Jwonda. Jwonda was pregnant. Her fetus died with her.

¶ 5        Prosecutors charged Lane with first degree murder and intentional homicide of an unborn child. 720 ILCS 5/9-1, 9-1.2 (West 2006). At the bench trial in 2018, Lane testified that when he saw police, while he and Jwonda were leaving by the back door, he took his gun out of his pocket to try to toss it away, but the gun discharged accidentally.

¶ 6        June and Johnson testified that Lane had the gun in his hand as he yelled at Jwonda, telling her she must not leave with Johnson that evening. Both June and Johnson also testified that Lane threatened to kill Jwonda. The trial court found Lane guilty of first degree murder and intentional homicide of an unborn child.

¶ 7        The trial court held that section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections mandated a sentence of natural life in prison because Lane had murdered more than one victim. Lane filed a motion to reconsider the sentence, arguing the court found him guilty of only one murder. The trial court denied the motion.

¶ 8         On appeal, Lane challenged only the sentence. The appellate court held that the sentencing provision for intentional homicide of an unborn child made it count as murder. 2022 IL App (1st) 182672, ¶ 44. The court further held that Lane waived his argument that Thurston's fetus did not meet the statutory definition of "victim." See 730 ILCS 5/5-1-22 (West 2006). We granted Lane leave to appeal from the appellate court's judgment.

¶ 9                                        II. ANALYSIS

¶ 10        Lane argues on appeal that the murder of a pregnant woman resulting in the death of her unborn fetus does not qualify as the murder of more than one victim within the meaning of section 5-8-1(a)(1)(c)(ii) of the Code. As the case presents only a question of statutory interpretation, we review *de novo* the trial court's ruling. *People v. Jackson*, 2011 IL 110615, ¶ 12.

¶ 11        This court has frequently restated the basic principles of statutory interpretation. When we interpret statutes, we strive to give effect to the legislature's intent. *Gillespie Community Unit School District No. 7 v. Wight & Co.*, 2014 IL 115330, ¶ 31. We look first to the plain and ordinary meaning of the language used in the statute (*Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 52), read in light of the subject it addresses and the apparent intent of the legislature in enacting it (*Van Dyke v. White*, 2019 IL 121452, ¶ 46). "No part of a statute should be rendered meaningless or superfluous. *** Courts must construe statutes relating to the same subject matter with reference to one another so as to give effect to the provisions of each, if reasonable." *Id.*

¶ 12                          A. Sentencing for Multiple Murders and
                               Intentional Homicide of an Unborn Child

¶ 13        We begin our analysis by examining section 5-8-1(a)(1)(c)(ii) of the Code, which the circuit court invoked to sentence Lane. At the time of his sentencing, section 5-8-1(a)(1)(c)(ii) provided that "the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant, *** at the time of the commission of the murder, had attained the age of 17 or more and *** is found guilty of murdering more than one victim." 730 ILCS

5/5-8-1(a)(1)(c)(ii) (West 2006). The other statute we must construe, section 9-1.2(d) of the Criminal Code of 1961, provided:

> "(d) Penalty. The sentence for intentional homicide of an unborn child shall be the same as for first degree murder, except that:
>
> > (1) the death penalty may not be imposed;
> >
> > (2) if the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court;
> >
> > (3) if, during the commission of the offense, the person personally discharged a firearm, 20 years shall be added to the term of imprisonment imposed by the court;
> >
> > (4) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/9-1.2(d) (West 2006).

¶ 14 The appellate court held that the sentencing provision for intentional homicide of an unborn child (*id.* § 9-1.2(d) ("The sentence for intentional homicide of an unborn child shall be the same as for first degree murder, except that: (1) the death penalty may not be imposed[.]")) "shows the legislature's intent to treat intentional homicide of an unborn child as another form of first degree murder." 2022 IL App (1st) 182672, ¶ 44. The State conceded that intentional homicide of an unborn child is not murder and, by doing so, abandoned the appellate court's holding at oral argument. We find the State's concession accords with Illinois law. In *People v. Shum*, 117 Ill. 2d 317, 363-64 (1987), this court interpreted a feticide statute that provided, "The sentence for feticide shall be the same as for murder, except that the death penalty may not be imposed." Ill. Rev. Stat. 1981, ch. 38, ¶ 9-1.1(d). The *Shum* court held, "taking the life of a fetus is not murder." *Shum*, 117 Ill. 2d at 364. The State now concedes the trial court found Lane guilty of only one murder.

¶ 15 Although section 5-8-1(a)(1)(c)(ii) on its face does not apply to this case because the court found Lane guilty of only one murder, the State contends that section 9-1.2(d), the sentencing provision for intentional homicide of an unborn

- 4 -

child, effectively amends section 5-8-1(a)(1)(c)(ii) and makes a life sentence mandatory for all defendants found guilty of one murder and one intentional homicide of an unborn child.

¶ 16    The appellate court here noted that in several cases the circuit court did not interpret section 9-1.2 as mandating life sentences for defendants found guilty of murdering a pregnant woman and committing intentional homicide of an unborn child. In *People v. Campos*, 227 Ill. App. 3d 434, 438 (1992), the circuit court sentenced the defendant to concurrent terms of 35 years' imprisonment for first degree murder and intentional homicide of an unborn child. Similarly, in *People v. Tijerina*, 381 Ill. App. 3d 1024, 1025 (2008), and *People v. Alvarado*, 2012 IL App (1st) 103784-U, ¶ 18, where defendants were convicted of first degree murder and intentional homicide of an unborn child, the courts sentenced the defendants to consecutive terms of 60 and 40 years' imprisonment.

¶ 17    In the case on which the circuit court relied, *People v. Kuchan*, 219 Ill. App. 3d 739, 746-47 (1991), the trial court sentenced Kuchan to life in prison under section 1005-5-3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, ¶ 1005-5-3.2(b)(2)), explicitly finding the sentence justified by Kuchan's brutal and heinous murder of the pregnant victim. The court sentenced Kuchan to a concurrent term of 40 years in prison for the intentional homicide of an unborn child. *Kuchan*, 219 Ill. App. 3d at 742. If the circuit court here interpreted section 5-8-1(a)(1)(c)(ii) correctly, the statute mandated a sentence of life in prison for the intentional homicide of an unborn child. The circuit court's decision here conflicts with *Kuchan*, the authority on which it purported to rely.

¶ 18    Prior to the appellate court's decision in this case, only one court interpreted section 9-1.2(d), the sentencing provision for intentional homicide of an unborn child, as effectively amending the multiple murder provision, section 5-8-1(a)(1)(c)(ii). In *People v. Shoultz*, 289 Ill. App. 3d 392, 398 (1997) (quoting 720 ILCS 5/9-1.2(d) (West 1994)), the appellate court held that section 9-1.2(d) mandates a life sentence for a murder and an intentional homicide of an unborn child, because otherwise the sentence imposed would not be " 'the same as for first degree murder.' " The *Shoultz* court found that section 9-1.2(d) effectively amends section 5-8-1(a)(1)(c)(ii), making intentional homicide of an unborn child

equivalent to murder for purposes of mandatory life sentences. Under the reasoning of *Shoultz*, section 5-8-1(a)(1)(c)(ii) should now read,

> "the court shall sentence the defendant to a term of natural life imprisonment if the defendant is found guilty of murdering more than one victim or is found guilty of committing more than one intentional homicide of an unborn child or is found guilty of at least one murder and at least one intentional homicide of an unborn child."

¶ 19                      B. Rules for Construing Statutes Relating to the
                                    Same Subject Matter

¶ 20        This court has established rules for interpreting statutes that relate to the same subject matter.

> "Amendment by implication is not favored; a statute will not be held to have implicitly amended an earlier statute unless the terms of the later act are so inconsistent with those of the prior act that they cannot stand together. [Citation.] If the two enactments are capable of being construed so that both may stand, the court should so construe them." *People v. Ullrich*, 135 Ill. 2d 477, 483 (1990).

"A court must construe statutes relating to the same subject matter with reference to one another so as to give effect to the provisions of each, if reasonable." *Harris v. Thompson*, 2012 IL 112525, ¶ 25.

¶ 21        Sections 5-8-1(a)(1)(c)(ii) and 9-1.2(d) both take effect as written if we construe section 9-1.2(d) as establishing the sentencing range for intentional homicide of an unborn child. The penalty provisions of other sections of the Criminal Code of 2012 similarly only set the range of authorized sentences for the offense defined. See 720 ILCS 5/8-1(c) (West 2022) (setting the sentencing range for solicitation of various offenses by reference to sentences for the solicited offenses); *id.* § 9-3.3(b) (setting sentencing range for drug-induced homicide); *id.* § 10-5.1(g) (setting the sentencing range for luring of a minor); *id.* § 12-3.4(d) (setting the sentencing range for violations of orders of protection).

¶ 22    The sentencing provisions "do[ ] not change the classification of the offense with which defendant has been charged and convicted." *People v. Rivera*, 362 Ill. App. 3d 815, 817 (2005); see *People v. Jameson*, 162 Ill. 2d 282, 290 (1994); *People v. Lockett*, 196 Ill. App. 3d 981, 986 (1990); *People v. Fields*, 383 Ill. App. 3d 920, 924 (2008).

¶ 23    Intentional homicide of an unborn child is not murder. *Shum*, 117 Ill. 2d at 364. It is a separate offense with a separate definition. Compare 720 ILCS 5/9-1(a) (West 2006), with *id.* § 9-1.2(a). For murder, the defendant must know only that his acts create a strong probability of great bodily harm to the victim "or another" (*id.* § 9-1(a)(2)); for intentional homicide of an unborn child the defendant must know of the "strong probability of death or great bodily harm to the pregnant woman or her unborn child" (*id.* § 9-1.2(a)(2)) while knowing of the pregnancy (*id.* § 9-1.2(a)(3)). Also, the felony murder provision of section 9-1(a)(3) does not appear in section 9-1.2. See *id.* §§ 9-1(a)(3), 9-1.2. Section 9-1.2 does not transform intentional homicide of an unborn child into murder. See *Shum*, 117 Ill. 2d at 364.

¶ 24    We find *People v. Pullen*, 192 Ill. 2d 36 (2000), instructive. Pullen pled guilty to five counts of burglary, all Class 2 offenses, but the circuit court imposed a Class X sentence because of Pullen's prior convictions for Class 2 offenses. *Id.* at 38-39; see 730 ILCS 5/5-5-3(c)(8) (West 1994). Consecutive sentences for two of the charges resulted in an aggregate sentence of 30 years. *Pullen*, 192 Ill. 2d at 39. Pullen sought to withdraw his guilty plea on grounds that his sentence exceeded the statutory maximum. *Id.* Section 5-8-4(c)(2) of the Unified Code of Corrections provided, "the aggregate of consecutive sentences shall not exceed the sum of the maximum terms authorized under Section 5-8-2 for the 2 most serious felonies involved." 730 ILCS 5/5-8-4(c)(2) (West 1994).

¶ 25    The *Pullen* court held:

"Our criminal code explicitly defines burglary as a Class 2 felony. 720 ILCS 5/19-1(b) (West 1994). This ends the case. Since burglary is a Class 2 felony, the maximum sentence for burglary is 14 years. 730 ILCS 5/5-8-2(a)(4) (West 1994). Accordingly, the maximum aggregate sentence was 28 years. ***

    *** The State contends that because defendant was to be sentenced as a Class X offender, his offenses should be treated as Class X felonies for purposes

of determining the maximum permissible aggregate sentence. *** [T]his court has repeatedly held that section 5-5-3(c)(8) does not change the character or classification of the felonies committed. A defendant who commits a Class 1 or Class 2 felony, even though he is subject to sentencing as a Class X offender pursuant to section 5-5-3(c)(8), still has only committed a Class 1 or Class 2 felony." *Pullen*, 192 Ill. 2d at 43.

¶ 26
C. Section 9-1.2(d) Does Not Convert Intentional
Homicide of an Unborn Child to Murder for
Purposes of the Multiple Murder Provision

¶ 27 The applicability of the Class X sentencing statute did not convert Pullen's offense of burglary to a Class X crime. Similarly, the sentencing provision of section 9-1.2 does not change the classification of intentional homicide of an unborn child into a kind of murder for purposes of section 5-8-1(a)(1)(c)(ii). Section 9-1.2(d) does not conflict with section 5-8-1(a)(1)(c)(ii). Section 9-1.2(d) establishes the court's authority to sentence defendants found guilty of intentional homicide of an unborn child to any sentence available for murder, except the death sentence. We agree with Lane's observation that the legislature would have had no need to add to section 9-1.2(d) subsections (2), (3), and (4), concerning mandatory additions for crimes committed with firearms, if the legislature believed section 9-1.2(d) made intentional homicide of an unborn child count as murder for all sentencing purposes. Section 9-1.2(d) authorizes courts to sentence defendants found guilty of intentional homicide of an unborn child to life in prison. But section 5-8-1(a)(1)(c)(ii) does not mandate a sentence of life in prison for a defendant found guilty of one murder and one intentional homicide of an unborn child. Section 5-8-1(a)(1)(c)(ii) applies only to defendants found guilty of more than one murder.

¶ 28 The courts in *Campos*, *Tijerina*, *Alvarado*, and *Kuchan* applied sections 9-1.2(d) and 5-8-1(a)(1)(c)(ii) correctly. We hold that section 9-1.2(d) sets the range of sentences available for intentional homicide of an unborn child, but it does not convert the intentional homicide of an unborn child into murder. We also hold that section 5-8-1(a)(1)(c)(ii) mandates life sentences only for defendants found guilty of more than one murder.

¶ 29 　　We overrule *Shoultz*, reverse the appellate court's judgment, vacate the sentence, and remand for resentencing. Because our interpretation of sections 9-1.2(d) and 5-8-1(a)(1)(c)(ii) resolves the case, we need not address Lane's argument that the unborn fetus does not count as a "victim" within the meaning of section 5-8-1(a)(1)(c)(ii).

¶ 30 　　　　　　　　　　　　　　　III. CONCLUSION

¶ 31 　　The trial court found Lane guilty of only one murder. Therefore, section 5-8-1(a)(1)(c)(ii), with its mandate of a sentence of life in prison for defendants found guilty of more than one murder, does not apply here. We reverse the appellate court's judgment, vacate the sentence, and remand for resentencing.

¶ 32 　　Appellate court judgment reversed.

¶ 33 　　Sentence vacated; cause remanded.

¶ 34 　　JUSTICE OVERSTREET, dissenting:

¶ 35 　　Defendant shot point-blank at the back of Jwonda Thurston's head knowing that she was pregnant with an unborn child, intentionally killing her and the child. I respectfully disagree with my colleagues' conclusion that a natural life sentence under section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2006)) is not required under these facts.

¶ 36 　　To answer the question of whether a natural life sentence is mandatory in this case, the court must interpret the relevant statutory language to determine what the legislature intended and then give effect to that intent. *People v. Ramirez*, 2023 IL 128123, ¶ 13. This analysis presents us with a legal issue that we review under the *de novo* standard of review. *People v. Kastman*, 2022 IL 127681, ¶ 29.

¶ 37 　　The best evidence of the legislature's intent is the plain and ordinary meaning of the words used by the legislature to create the statutes under consideration. *Ramirez*, 2023 IL 128123, ¶ 13. When the legislature has set out a statute with clear

and unambiguous language, we apply the statute as written without referencing other aids of statutory construction. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 38    Our analysis in the present case involves consideration of two statutory provisions. First, section 9-1.2(d) of the Criminal Code of 1961 (Criminal Code) provides that "[t]he sentence for intentional homicide of an unborn child *shall be the same as for first degree murder*." (Emphasis added.) 720 ILCS 5/9-1.2(d) (West 2006). Second, section 5-8-1(a)(1)(c)(ii) of the Code of Corrections requires sentencing courts to impose a natural life sentence if a defendant is found guilty of first degree murder of two victims. Specifically, section 5-8-1(a)(1)(c)(ii) states that the circuit court "shall" sentence the defendant to a term of natural life imprisonment if the defendant is "*found guilty of murdering more than one victim*." (Emphasis added.) 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2016).

¶ 39    If defendant had been convicted of two counts of first degree murder of two victims, the circuit court would be obligated to impose a natural life sentence under section 5-8-1(a)(1)(c)(ii). *People v. Winchel*, 159 Ill. App. 3d 892, 921 (1987) (section 5-8-1(a)(1)(c) precludes the circuit court from exercising any discretion in sentencing defendants convicted of multiple murder); *People v. Pittman*, 2018 IL App (1st) 152030, ¶ 20 ("Pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections, defendant was subject to a mandatory term of natural life imprisonment" because "he was found guilty of murdering more than one victim.").

¶ 40    Here, defendant was not convicted of two first degree murders. However, he was convicted of one count of first degree murder and also convicted of a second offense that, while not a first degree murder conviction, nonetheless, for sentencing purposes, must be treated the "same" as if it were a first degree murder conviction. 720 ILCS 5/9-1.2(d) (West 2006) ("[t]he sentence *** shall be the same as for first degree murder").

¶ 41    Accordingly, defendant was convicted of two offenses that are to be treated, for sentencing purposes, as first degree murder convictions. There is no ambiguity with respect to this conclusion; it is required under the plain and unambiguous language of section 9-1.2(d) of the Criminal Code. As a result, any sentence less than a natural life sentence in this case would be sentencing the conviction of intentional homicide of an unborn child *different than*, rather than *the same as*, a first degree

murder conviction, which would be contrary to the plain language of the statutes in question.

¶ 42　　In reaching this conclusion, I find *People v. Shoultz*, 289 Ill. App. 3d 392 (1997), to be persuasive. In *Shoultz*, the appellate court applied the same plain language analysis and reached the correct conclusion that a mandatory life sentence is required when a defendant is convicted of first degree murder and feticide (the offense that preceded intentional homicide of an unborn child). *Id.* at 398. In *Shoultz*, the defendant made the same argument as defendant here, that section 5-8-1(a)(1)(c)(ii) applies only when both convictions are "murder." *Id.* The *Shoultz* court, however, correctly rejected this argument, noting that the unambiguous language of section 9-1.2(d) of the Criminal Code directed that sentencing for feticide be imposed " 'the same as for first degree murder.' " *Id.* (quoting 720 ILCS 5/9-1.2(d) (West 1994)). The *Shoultz* court added, "The legislature provided only one exception, the death penalty, to the sentencing provisions applicable to feticide, and this court can add no other." *Id.* at 399.

¶ 43　　Contrary to what the majority suggests (*supra* ¶ 18), the *Shoultz* court's analysis is *not* founded on the suggestion of a statutory amendment by implication, which is disfavored. Instead, the *Shoultz* court simply applied the language of the statutes as written, emphasizing that "[w]here a statute is unambiguous, the court may not read into it exceptions other than those provided by the legislature." *Shoultz*, 289 Ill. App. 3d at 398. The *Shoultz* court, therefore, applied the plain and ordinary meaning of the legislature's words set out in section 9-1.2(d) and gave effect to the legislature's intent as expressed with those unambiguous words.

¶ 44　　Likewise, the appellate court in the present case also correctly viewed the plain and ordinary meaning of the words set out in section 9-1.2(d) as the best evidence of the legislature's intent. The appellate court found no ambiguity and held that the statutory language required that a defendant who is found guilty of both first degree murder and intentional homicide of an unborn child be sentenced to a term of natural life imprisonment. 2022 IL App (1st) 182672, ¶ 43.

¶ 45　　Similar to my conclusion above, the appellate court below concluded,

"Thus, where the offense of intentional homicide of an unborn child *is to be sentenced the same as first degree murder* and where defendant was found

- 11 -

guilty of intentional homicide of an unborn child and first degree murder, pursuant to section 5-8-1(a)(1)(c)(ii) of the Unified Code of Corrections, the trial court was required to sentence defendant to a term of natural life imprisonment." (Emphasis added.) *Id.* ¶ 44.

¶ 46　　The appellate court also found it significant that the elements of intentional homicide of an unborn child are almost identical to the elements of first degree murder, with the exception that the offender knew the individual was pregnant. *Id.* The appellate court stated, "This shows the legislature's intent to treat intentional homicide of an unborn child as another form of first degree murder." *Id.* I agree with the appellate court's well-reasoned analysis.

¶ 47　　Here, the majority opinion emphasizes that defendant was not convicted of "murdering" Jwonda's unborn child and focuses the discussion on whether the offenses are the same instead of properly focusing on the sentencing requirements for the offenses. In doing so, the majority maintains that the State "conceded that intentional homicide of an unborn child is not murder" and, thus, "abandoned the appellate court's holding at oral argument." *Supra* ¶ 14. The majority's conclusion here is entirely incorrect.

¶ 48　　The majority's focus on whether defendant was convicted of first degree murder of Jwonda's unborn child is misdirected because the issue before the court centers on the proper *sentence* for a conviction of intentional homicide of an unborn child and, more specifically, whether the circuit court in the present case imposed a sentence "the same as first degree murder." Whether intentional homicide of an unborn child and first degree murder are the same offenses is not the issue before this court, and the State's recognition that they are not the same offenses is not a "concession." That conclusion was never disputed. Instead, the dispute centers on sentencing requirements, not a determination of whether the offenses are the same.

¶ 49　　In support of its analysis, the majority quotes *People v. Shum*, 117 Ill. 2d 317, 364 (1987), where this court stated, "taking the life of a fetus is not murder." *Supra* ¶ 14.The *Shum* court's conclusion on this point has no relevance in determining the intent of the legislature with respect to sentencing requirements for a conviction of intentional homicide of an unborn child.

¶ 50　　　In *Shum*, this court did not construe any statutory language relevant to the legislature's intent with respect to the sentencing requirements set out in section 5-8-1(a)(1)(c)(ii) of the Code of Corrections or in section 9-1.2(d) of the Criminal Code. Instead, the issue before the court in *Shum* concerned, among other issues, whether the offense of feticide was a lesser included offense of first degree murder. That analysis entailed comparison of the elements of the respective offenses. *Shum*, 117 Ill. 2d at 363 (noting that, to be a lesser included offense, all of the elements of the lesser included offense must be included within the greater offense). The *Shum* court noted that the statute defining murder does not require death of a fetus and, therefore, concluded that feticide is not a lesser included offense of murder. *Id.* at 363-64.

¶ 51　　　This analysis has no bearing on the legislature's mandate that the sentence for a conviction of intentional homicide of an unborn child be the same as a conviction for first degree murder. The *Shum* court's focus was on the elements of the two offenses. Here, proper analysis focuses on sentencing requirements. The different analyses are not comparable.

¶ 52　　　The majority gives significant weight to several cases in which *circuit courts* failed to impose a mandatory life sentence pursuant to section 8-1(a)(1)(c)(ii) of the Code of Corrections when a defendant was convicted of both first degree murder and intentional homicide of an unborn child. *Supra* ¶¶ 16-17 (citing *People v. Campos*, 227 Ill. App. 3d 434, 438 (1992), *People v. Tijerina*, 381 Ill. App. 3d 1024, 1025 (2008), *People v. Alvarado*, 2012 IL App (1st) 103784-U, ¶ 18, and *People v. Kuchan*, 219 Ill. App. 3d 739, 746-47 (1991)).

¶ 53　　　In each of these cases, however, the reviewing courts did *not* consider or analyze the legislature's intent with respect to section 5-8-1(a)(1)(c)(ii) of the Code of Corrections or section 9-1.2(d) of the Criminal Code. Accordingly, these decisions offer no analysis of this issue whatsoever by either the circuit courts or the reviewing courts. As a result, these cases have no precedential or persuasive value, as we are left only to speculate about the reasoning that the circuit courts utilized in reaching their sentencing decisions and the reviewing courts were not asked to address the issue. The majority claims that the circuit court's judgment in the present case conflicts with *Kuchan*, but that clearly is not the case where the *Kuchan* court offers no discussion or analysis of this issue.

¶ 54    The majority also finds it significant that the mandatory firearm enhancements in the intentional homicide of an unborn child statute mirror those set out in the first degree murder sentencing statute (720 ILCS 5/9-1.2(d)(2), (3), (4) (West 2006)). *Supra* ¶ 27. However, as the State explains in its brief, these enhancements appear in both statutes because, in 1999, the General Assembly passed Public Act 91-404 (eff. Jan. 1, 2000), which added identical firearm sentencing enhancements to many violent felonies throughout the Criminal Code and the Code of Corrections. This statutory amendment does not offer any insight into the legislature's intent with respect to the sentencing issue before us in this case.

¶ 55    The legislature did not equivocate in defining the sentencing mandate set out in section 9-1.2(d), excluding only the death penalty as a possible sentence for intentional homicide of an unborn child. It did not exclude mandatory natural life sentences under section 5-8-1(a)(1)(c)(ii) of the Code of Corrections. The majority, nonetheless, adds this exception to section 9-1.2(d)'s sentencing mandate. In doing so, the majority undermines the legislature's unambiguous language and directs sentencing courts to sentence intentional homicide of an unborn child differently than first degree murder, rather than the same.

¶ 56    I believe this court is obligated to affirm the circuit and appellate courts' judgments; therefore, I dissent from the majority's decision reaching the opposite conclusion.

¶ 57    JUSTICE HOLDER WHITE joins in this dissent.